IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT

**SAYLOR, C.J., EAKIN, BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.**

| | | |
|---|---|---|
| A.S., | : | No. 24 MAP 2014 |
| | : | |
| Appellee | : | Appeal from the Order of the |
| | : | Commonwealth Court at No. 473 MD |
| | : | 2012, dated March 7, 2014 |
| v. | : | |
| | : | |
| | : | |
| | : | |
| PENNSYLVANIA STATE POLICE, | : | |
| | : | |
| Appellant | : | ARGUED: March 8, 2016 |

**OPINION**

**JUSTICE DOUGHERTY**                    **DECIDED:    August 15, 2016**

In this appeal by the Pennsylvania State Police (PSP) from a grant of mandamus

relief, we revisit an issue that evenly divided the Court in *Commonwealth v. Gehris*, 54

A.3d 862 (Pa. 2012), concerning the proper construction of the lifetime-registration

triggering language "two or more convictions" in Pennsylvania's former sex offender

registration statute, Megan's Law II (formerly codified at 42 Pa.C.S. §9795.1(b)(1)

(superseded)).[1]  In accordance with the *Gehris* Opinion in Support of Reversal (OISR),

---

[1] Megan's Law II was succeeded by Megan's Law III (Act 152 of 2004), which in turn
was superseded by the Sex Offender Registration and Notification Act (SORNA), 42
Pa.C.S. §§9799.10-9799.41, which became effective over ten years after appellee's
registration obligation began.  The issue of whether appellee is subject to lifetime
registration is a Megan's Law II question, not a SORNA question.

The Court has granted review in a separate appeal involving the same basic provision,
as retained under SORNA, *Commonwealth v. Lutz-Morrison*, __ A.3d __ (Pa. 2016),
also decided today.

as supplemented by our analysis below, we hold the provision, considered in the context of the statutory language as a whole, is amenable to two reasonable constructions; and we further hold the statute, which sets forth a graduated scheme of registration, encompasses a recidivist philosophy.[2] We therefore conclude the statute requires an act, a conviction, and a subsequent act to trigger lifetime registration for multiple offenses otherwise triggering a ten-year period of registration. Accordingly, we affirm.

Section 9795.1 provided, in relevant part, as follows:

(a) Ten-year registration.-- **Except as set forth in subsection (a.1) or (b)**, the following individuals shall be required to register with the Pennsylvania State Police for a period of ten years:

(1) Individuals convicted of any of the following offenses:

18 Pa.C.S. § 2901 (relating to kidnapping) where the victim is a minor.

18 Pa.C.S. § 2910 (relating to luring a child into a motor vehicle or structure).

18 Pa.C.S. § 3124.2 (relating to institutional sexual assault).

18 Pa.C.S. § 3126 (relating to indecent assault) where the offense is graded as a misdemeanor of the first degree or higher.

18 Pa.C.S. § 4302 (relating to incest) where the victim is 12 years of age or older but under 18 years of age.

18 Pa.C.S. § 5902(b) or (b.1) (relating to prostitution and related offenses) where the actor promotes the prostitution of a minor.

---

[2] The *Gehris* OISR explained: "[t]he essence of the recidivist philosophy is to afford first-time offenders (or offenders convicted of less serious offenses) some amount of time within which to modify their behavior away from criminality. Should they fail to take advantage of the opportunity, and transgress a second time or more, the 'next' sentence will be more severe." *Gehris*, 54 A.3d at 875 (OISR by Castille, C.J., joined by Saylor and Baer, JJ.).

18 Pa.C.S. § 5903(a)(3), (4), (5) or (6) (relating to obscene and other sexual materials and performances) where the victim is a minor.

**18 Pa.C.S. § 6312 (relating to sexual abuse of children).**

**18 Pa.C.S. § 6318 (relating to unlawful contact with minor).**

18 Pa.C.S. § 6320 (relating to sexual exploitation of children).

(2) Individuals convicted of an attempt, conspiracy or solicitation to commit any of the offenses under paragraph (1) or subsection (b)(2).

\* \* \*

(b) Lifetime registration.--The following individuals shall be subject to lifetime registration:

**(1) An individual with two or more convictions of any of the offenses set forth in subsection (a).**

(2) Individuals convicted:

(i) in this Commonwealth of the following offenses:

18 Pa.C.S. § 3121 (relating to rape).

18 Pa.C.S. § 3123 (relating to involuntary deviate sexual intercourse).

18 Pa.C.S. § 3124.1 (relating to sexual assault).

18 Pa.C.S. § 3125 (relating to aggravated indecent assault).

18 Pa.C.S. § 4302 (relating to incest) when the victim is under 12 years of age.

\* \* \*

(3) Sexually violent predators.

42 Pa.C.S. §9795.1(a)-(b) (emphases added). Under both Megan's Law II and SORNA,

PSP is tasked with maintaining Pennsylvania's sex offender registry. 42 Pa.C.S.

§9799.1(1) (Megan's Law II) (superseded); 42 Pa.C.S. §9799.16 (SORNA).

This dispute arose after appellee had completed his sentence for the underlying crimes. Proceeding under a belief he was subject to a ten-year SORNA registration period (a belief shared at sentencing by the court and the prosecutor), appellee filed a Petition for Review in the Nature of a Complaint in Mandamus in the Commonwealth Court's original jurisdiction on July 19, 2012, shortly before expiration of that period. The petition sought to compel PSP to correct appellee's sexual offender registration status from lifetime registrant to ten-year registrant and to remove him from the registry when the ten-year period expired. In the course of litigation, the parties attached exhibits including the transcripts from appellee's guilty plea and sentencing proceedings; ultimately, the parties stipulated discovery was unnecessary and cross-motions for summary judgment were filed.

The facts respecting sex offender registration are thus undisputed. Appellee was twenty-one years old when he met the sixteen-year-old female victim on-line late in 1999. Appellee developed a relationship with the victim which ultimately resulted in a series of sexual encounters. The age of consent in Pennsylvania is sixteen, *see* 18 Pa.C.S. §3122.1; thus, the consensual sexual relationship itself was not criminal. However, during the course of the relationship, appellee persuaded the victim to take and transmit sexually explicit photographs of herself and he also photographed the two engaging in sexual acts. It is a crime to photograph or cause to be photographed a minor engaging in consensual sex and causing a minor to take sexual photographs of herself. 18 Pa.C.S. §6312(d).

After the victim's father found sexually explicit photographs on the victim's computer and reported them to police, appellee admitted to the sexual relationship, as well as the explicit photographs taken by him and taken by the victim at his request.

In December 2000, a criminal complaint was filed in Montgomery County charging appellee, a first-time offender, with seven counts of sexual abuse of children (photographing, videotaping, depicting on computer, or filming sexual acts), twenty counts of sexual abuse of children (possession of child pornography, relating to other images of child pornography found on his computer), and single counts of unlawful contact with a minor, corruption of minors, and criminal solicitation.[3]

On October 5, 2001, appellee entered an open guilty plea to single counts of sexual abuse of children and unlawful contact with a minor — each of which was an enumerated offense for purposes of Megan's Law II reporting under Section 9795.1(a) — and corruption of minors, which was not. The remaining charges were withdrawn. Sentencing was deferred for a pre-sentence report and sexual offender assessment.

On February 28, 2002, appellee was sentenced to concurrent 5- to 23-month terms of imprisonment on the first two counts and a consecutive five-year probationary term for corruption of minors. As required by Megan's Law II, the court also informed appellee a collateral consequence of his convictions required him to register as a sex offender. *See* 42 Pa.C.S. §9795.3. The parties and the trial court believed appellee was subject to a ten-year registration period, not lifetime registration. *See* N.T. 2/28/02 at 29-30, 45. Thus, appellee's mother testified, "My son made a mistake, a terrible, terrible error in his life that's affected him. He's been punished. He will be punished. He has a ten-year reporting component to this punishment[,]" to which the trial court replied, "I know." *Id.* at 29-30. The trial prosecutor confirmed, "He's now facing a ten-year registration for Megan's Law. That's true. But why is he facing this ten-year registration? He is because what he did is a serious offense." *Id*. at 45. In addition,

---

[3] 18 Pa.C.S. §§6312(b), 6312(d), 6318(a)(5), 6301(a)(1)(i), and 902(a), respectively.

appellee was found not to be a sexually violent predator (SVP), and thus he was not subject to lifetime registration under the provision applicable to SVPs. *Id*. at 59-60; *see* 42 Pa.C.S §9795.1(b)(3). The court further found appellee was unlikely to reoffend. N.T. 2/28/02 at 63, 68. Finally, the court advised appellee of the potential criminal consequences of the registration requirement: he would commit a felony of the third degree if he failed to fulfill his obligations under Megan's Law II. *Id*. at 60.

After appellee was released from prison, he duly registered as a sex offender with the PSP on August 2, 2002; he then successfully completed all aspects of his criminal sentence and complied with all aspects of his reporting obligation. *See* Appellee's Petition for Review at 3; Appellant's Preliminary Objections at 1. Appellee contacted PSP and requested removal of his name from the registry after August 2, 2012, but PSP refused, claiming his guilty plea to both sexual abuse of children and unlawful contact with a minor triggered lifetime registration under Section 9795.1(b)(1), because he was "an individual with two or more convictions" of offenses listed in subsection (a). *See* Appellee's Petition for Review at 4; Appellant's Preliminary Objections at 2; Appellant's Motion for Summary Judgment at 5-6.

PSP's refusal to remove appellee's name from the registry led to this mandamus action. A divided *en banc* Commonwealth Court, in a published opinion authored by then-President Judge Pellegrini, granted appellee's motion for summary judgment and denied PSP's cross-motion. The court accordingly directed PSP to change appellee's designation as a lifetime registrant to a ten-year registrant. *A.S. v. Pennsylvania State Police*, 87 A.3d 914, 923 (Pa. Cmwlth. 2014) (*en banc*).

The majority below characterized the question as involving whether appellee's guilty plea to two separate crimes involving photographs of the same minor constituted one or two convictions for purposes of Section 9795.1(b)(1). The court then examined

*Gehris*, where the evenly-divided Court affirmed a determination of lifetime registration by operation of law, with the dispositive order accompanied by an Opinion in Support of Affirmance (OISA) by Justice Todd (joined by former Justices Eakin and McCaffery) and an OISR by former Chief Justice Castille (joined by Justices Saylor (now Chief Justice) and Baer).

After summarizing those opinions, which will be more fully described below, the court deemed the *Gehris* OISR to be more persuasive.  In the court's view, failure to adopt the OISR approach would render the distinction between the ten-year registration in subsection (a) and the lifetime requirement in subsection (b) "meaningless," since every event involving a minor taking his or her own picture could support multiple charges and convictions.  In addition, the court opined, the OISR interpretation fostered the purpose of the statute, "which allows a person to reform" in the ten-year registration period, and provided a bright-line for administration.  *A.S.*, 87 A.3d at 922.  The court then concluded appellee's conduct arose from a single criminal episode and one "logically related act," *id.* at 922 & n.11, *citing and discussing Commonwealth v. Hude*, 458 A.2d 177 (Pa. 1983), rendering it one conviction, leading to a ten-year registration period.  *A.S.*, 87 A.3d at 923.

Judge Brobson authored a dissenting opinion, which Judge Leadbetter joined. The dissent noted the majority's interpretation was in tension with the Superior Court's decision in *Commonwealth v. Merolla*, 909 A.2d 337 (Pa. Super. 2006), and subsequent decisions applying *Merolla*, including the unreported panel decision in *Gehris*.[4]  The

---

[4] The issue in *Merolla* was raised in the Commonwealth's appeal from the judgment of sentence, where the Commonwealth argued Merolla's plea of *nolo contendere* to two separate counts of indecent assault constituted two convictions, requiring lifetime registration.  The panel looked to criminal sentencing decisions of this Court involving the recidivist philosophy and the "three strikes statute," *see* 42 Pa.C.S. §9714; stressed Section 9714(a)(2) had language referring to the person having "previously" been (continued…)

dissent recognized "it may be a reach to pronounce the law on this issue settled finally," but noted the question was settled in the Superior Court and *Merolla*'s statutory analysis, which was approved by the *Gehris* OISA, was sufficiently compelling not to adopt a contrary reading, which would lead to confusion.[5]  *Id*. at 929-30 (Brobson, J., dissenting).

On this direct appeal, the parties track and supplement the positions in the *Gehris* opinions concerning the proper construction of Section 9795.1(b)(1).  PSP maintains any person with two or more qualifying convictions at the moment of sentencing, such as appellee, is subject to lifetime registration.  PSP claims it properly interpreted and applied the statute and appellee had no right to mandamus relief.

PSP develops the provision is clear and unambiguous, appellee pleaded guilty to two qualifying offenses, and the Commonwealth Court was obliged to look no further.

---

(…continued)

convicted, while Megan's Law II had no such language; and stressed Section 9714 was a penal provision, while the reporting requirements in Megan's Law II are directed at public safety.  Based on its "literal" reading, the panel concluded lifetime registration was required, stressing such "heightened registration is not an additional punishment." *Merolla*, 909 A.2d at 345-47.

Notably, the panel did not discuss the counter-arguments, if any, forwarded by Merolla.

[5] Notably, the dissent found appellee's second argument, which the majority did not address given its disposition, distinguished *Gehris*.  Appellee argued the Legislature could not have intended the difference between ten-year and lifetime registration to depend on the number of existing convictions in a circumstance where the offender engaged in a single act resulting in multiple convictions.  *A.S.,* 87 A.3d at 931. Specifically, appellee argued the elements of the two predicate offenses of sexual abuse of children and unlawful contact overlap in such a way that an individual could commit both offenses by a single act, such as here, where he contacted the victim to cause her to photograph herself engaging in a sexual act.  *Id.*  The dissent opined it would be unreasonable and absurd to hold an offender was subject to lifetime registration where the offender engaged in a single act, but concluded a genuine issue of material fact existed as to whether the two offenses here involved such a single act. Therefore, the dissent found the question could not be resolved on summary judgment and the case should be remanded.  *Id*. at 931-34.

PSP asserts the panel majority's finding that appellee's conduct was one logically related act, making his two convictions one, cannot be squared with the plain language of the statute or applicable canons of statutory construction. PSP notes the panel failed to account for the fact the phrase "two or more convictions" is clear and unambiguous, as recognized in both *Gehris* opinions. PSP stresses a single prosecution and court proceeding may result in multiple convictions, as happened here. PSP believes the panel inserted words into the statute which are not present in the text.

Assuming an ambiguity exists, PSP posits, the General Assembly clearly intended "two or more convictions" to encompass multiple convictions from a single criminal episode. PSP relies on the fact the phrase "two or more convictions" remained unchanged in Megan's Law III and SORNA, which it believes signaled the General Assembly approved of the existing interpretation of Section 9795.1(b)(1) by the intermediate court in *Merolla*.

PSP finally contends the panel incorrectly relied on the recidivist philosophy as that philosophy is a sentencing concept having no bearing on the intent behind a non-penal public protection law. PSP posits the purpose of Megan's Law II was not to punish, but rather to protect the public, and so the recidivist philosophy is not a reliable guide to legislative intent. Appellant's Brief at 40, *citing*, *e.g.*, *Commonwealth v. Leidig*, 956 A.2d 399, 404-06 (Pa. 2008).

Appellee responds that the Commonwealth Court, after considering the General Assembly's policy declaration and the graduated two-tier structure of the statute, correctly found Section 9795.1(b)(1) to be ambiguous when read in the context of the entirety of Megan's Law II. Appellee notes a single judgment of conviction follows from each criminal case regardless of the number of guilty counts. Appellee then contends Section 9795.1(b)(1) has a latent ambiguity, revealed when the plural term "convictions"

is applied to offenses arising from the same criminal act, episode, or course of conduct. He reasons the ambiguity does not arise from confusing words, but from a disparity between what the statute states is the desired result and a flawed methodology which could prevent that result if a term is construed in a certain way. Appellee maintains it is evident Section 9795.1(b)(1) is ambiguous as reasonable minds could, and have, disagreed about the meaning of "two or more convictions" in the context of the overall statutory construct.

Appellee further contends the panel majority correctly discerned a recidivist philosophy reflected in the statute. Appellee concedes the registration provision is facially remedial as its intent is to protect the public from sexual offenders. However, he notes the statute can also be interpreted as penal because an individual who fails to register is subject to criminal prosecution. Appellee notes, in a prosecution for failure to register, a penal context, he would have the benefit of the construction precept that penal statutes must be strictly construed, *i.e.*, the "rule of lenity." *See* 1 Pa.C.S. §1928(b)(1). Relatedly, appellee contends, where an ambiguity exists in the language of a penal statute, such language should be interpreted in the light most favorable to the defendant. *See Commonwealth v. Booth*, 766 A.2d 843, 846 (Pa. 2001).

Continuing with this theory, appellee posits there is a need for uniformity in interpreting statutes having application in both penal and non-penal contexts. Appellee's Brief at 33-34, *citing Leocal v. Ashcroft*, 543 U.S. 1, 11 n.8 (2004) ("Even if § 16 [18 U.S.C. § 16, defining "crime of violence"] lacked clarity on this point, we would be constrained to interpret any ambiguity in the statute in petitioner's favor. Although here we deal with § 16 in the deportation context, § 16 is a criminal statute, and it has both criminal and noncriminal applications. Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context,

the rule of lenity applies.").[6]  Appellee argues the canon of strict construction logically should apply whether he is a ten-year or lifetime registrant and regardless of whether the issue arises related to correctly ascertaining his duty to register under Section 9795.1(b)(1) or in a prosecution for failure to register.

In appellee's view, the General Assembly's graduated, two-tier registration regime, in addition to creating ambiguity, is a compelling indication a recidivist philosophy infuses Section 9795.1(b)(1).  Appellee posits the tiers were designed to segregate less serious, first-time offenders from more serious, violent, or repeat offenders and establish dramatically different periods of supervision.  Appellee further notes many, if not all, of the ten-year registration offenses involve crimes where a single non-violent episode may easily generate multiple violations.  Appellee concludes that, to prevent evisceration of the two-tier structure, the Court should affirm that Section 9795.1(b)(1) does not apply to offenders whose two first-time convictions arose from a single charging document and a single, non-violent course of criminal conduct.

The issue involves statutory interpretation, which is a question of law, and our review is plenary and non-deferential.  *See*, *e.g., Commonwealth v. Conklin*, 897 A.2d 1168, 1175 (Pa. 2006).[7]  In such cases, the Statutory Construction Act directs courts to

---

[6] PSP, which filed a reply brief, does not specifically respond to appellee's reliance upon *Leocal*, but repeats that Megan's Law II was simply not a penal law subject to strict construction.  In addition, PSP notes the rule of lenity was invoked by the dissent in *Commonwealth v. Wilgus*, 40 A.3d 1201, 1210 (Pa. 2012) (Castille, C.J., dissenting, joined by Baer, J.), a case involving prosecution for failing to register, but the *Wilgus* majority did not discuss the rule.

[7] The action below sounded in mandamus, which "lies only 'to compel official performance of a ministerial act or mandatory duty where there is a clear legal right in the plaintiff, a corresponding duty in the defendant, and a lack of any other adequate and appropriate remedy at law.'" *See Crozer Chester Med. Ctr. v. Dep't of Labor & Indus.*, 22 A.3d 189, 193 (Pa. 2011), *quoting Delaware River Port Auth. v. Thornburgh,* 493 A.2d 1351, 1355–56 (Pa. 1985).

(continued…)

ascertain and effectuate the intent of the General Assembly. *Id.*, *citing* 1 Pa.C.S. §1921(a). "The statute's plain language generally provides the best indication of legislative intent." *See, e.g., McGrory v. Dep't of Transp.*, 915 A.2d 1155, 1158 (Pa. 2007); *Commonwealth v. Gilmour Mfg. Co.*, 822 A.2d 676, 679 (Pa. 2003). It is only when statutory text is determined to be ambiguous that we may go beyond the text and look to other considerations to discern legislative intent. "Where statutory or regulatory language is ambiguous, this Court may resolve the ambiguity by considering, *inter alia*, the following: the occasion and necessity for the statute or regulation; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; the former law, if any, including other statutes or regulations upon the same or similar subjects; the consequences of a particular interpretation; and administrative interpretations of such statute." *Freedom Med. Supply, Inc. v. State Farm Fire & Cas. Co.*, 131 A.3d 977, 984 (Pa. 2016), *citing* 1 Pa.C.S. §1921(c).

In this appeal, we have the advantage of not writing upon a blank slate: the *Gehris* OISA and OISR each offered a developed, reasoned expression concerning the meaning of Section 9795.1(b)(1)'s text "[a]n individual with two or more convictions of any of the offenses set forth in subsection (a)." The opinions agreed there was no facial ambiguity in that sentence. *See Gehris*, 54 A.3d at 862 (OISA) (stressing "clear and unambiguous language chosen by the legislature"); *id.* at 874-75 (OISR) ("In and of itself, subsection (b)(1) … is not ambiguous or unclear.") In addition, the OISA acknowledged the OISR offered "a reasoned, plausible, policy-based rationale for

(…continued)
PSP does not dispute mandamus relief is appropriate if we were to sustain appellee's reading of the statute. The question thus focuses narrowly on the proper construction.

interpreting [subsection] (b)(1) as reflecting a recidivist philosophy." *Id.* at 862 (OISA). The OISA concluded, however, the plain language of subsection (b)(1) — which, unlike other statutes where a recidivist philosophy had been discerned[8] — contained "no temporal separation" between commission of the enumerated offenses, constrained the Court from concluding a recidivist philosophy animated the provision. *Id.* at 866-68.[9]

For its part, the *Gehris* OISR reviewed prior cases, both from this Court and the United States Supreme Court, involving the recidivist philosophy.[10] Because we are ultimately persuaded by the core of the OISR's ensuing analysis (as supplemented by additional points developed below), we simply reproduce its essence here:

> [W]e are satisfied that Section 9795.1, which sets forth a graduated scheme for Megan's Law registration, similar in nature to the graduated schemes discussed in this Court's prior case law, encompasses the recidivist philosophy in addition to its perhaps more obvious goals of public protection and deterrence. Of course, registration may not be punitive for purposes of the constitutional protections afforded to offenders, as this Court concluded in [*Commonwealth v.*] *Williams*[, 832 A.2d 962 (Pa. 2003)]. Nevertheless, registration obviously has serious and restrictive consequences for the offender, including prosecution if the requirement is violated. Registration can also affect the offender's ability

---

[8] *See Commonwealth v. McClintic*, 909 A.2d 1241 (Pa. 2006) (construing "three strikes" provision in Sentencing Code, *i.e.*, 42 Pa.C.S. § 9714); *Commonwealth v. Shiffler*, 879 A.2d 185 (Pa. 2005) (same); *Commonwealth v. Dickerson*, 621 A.2d 990 (Pa. 1993) (same); *Commonwealth v. Jarowecki*, 985 A.2d 955 (Pa. 2009) (construing Crimes Code grading provision governing possession of child pornography, *i.e.*, 18 Pa.C.S. §6312).

[9] The OISA also explained why it concluded the statute was not a penal provision subject to strict construction in favor of the defendant. *Gehris*, 54 A.3d at 865 (OISA).

[10] In addition to discussing the sentencing cases cited in the OISA (*Dickerson*, *Shiffler*, *McClintic* and *Jarowecki*), the OISR briefly noted Supreme Court opinions supporting that certain sentencing schemes "imply a recidivist philosophy." *Gehris*, 54 A.3d at 875, *citing Sykes v. United States*, 564 U.S. 1 (2011); *United States v. Rodriquez*, 553 U.S. 377 (2008).

to earn a livelihood, his housing arrangements and options, and his reputation. *See also Fross v. County of Allegheny,* 610 Pa. 421, 20 A.3d 1193 (2011).

The "two or more convictions" language in subsection (b) seems clear and unambiguous on the surface. But if Section 9795.1 is viewed as a whole and the General Assembly's legislative findings and declaration of policy at 42 Pa.C.S. §9791 are read closely, it is clear that the primary concern is with sexually violent predators. Considering the nine subsections in Section 9791, the term "sexually violent predator" appears nine times, particularly in the provision addressing repeat offenders: "sexually violent predators pose a high risk of engaging in further offenses even after being released from incarceration or commitments and that protection of the public from this type of offender is a paramount governmental interest." 42 Pa.C.S. §9791(a)(2). References to nonviolent offenders are comparatively few, just four in all, and two of these pertain specifically to recent amendments accounting for the circumstance of released "offenders" who may be homeless or without a "fixed place of habitation." *See* 42 Pa.C.S. §9791(a)(1) & (b)(3); *see also Commonwealth v. Wilgus,* 40 A.3d 1201 (Pa. 2012).

It is evident that in drafting Section 9795.1, the General Assembly meant to set up a graduated registration scheme. In this tiered approach, more serious (primarily violent) offenders and "true" recidivists who squander a given opportunity to reform are understandably subject to lifetime requirements. By contrast, lesser, first-time offenders, especially those who are nonviolent, receive an opportunity for rehabilitation and eventual freedom from the requirements if they "stay on the path" for ten years.

Without in any way condoning the criminal conduct that led appellant to his current circumstances, we would conclude that the record in this case directs application of the ten-year registration requirement. Appellant's two Megan's Law offenses were nonviolent, perhaps triggered by situational problems in his marriage and career, and arose out of the same course of conduct, which ultimately did not result in direct harm to any actual victims. Appellant had no criminal past, much less a history of Megan's Law offenses, and was taken into custody without resisting. In open court, he expressed remorse and regret and accepted responsibility for his actions. He voluntarily undertook psychotherapy and has embraced the treatment, was not found to be a sexually violent predator and, in fact, was described by a former SOAB [Sexual Offenders Assessment Board] member as a good candidate for rehabilitation. It is true that appellant was convicted of "two or more" Megan's Law subsection (a) offenses, and without consideration of how this statutory scheme falls within the sphere of [the] recidivist philosophy legislation

detailed above, a strict, mechanical application of Section 9795.1(b) would result in imposition of the lifetime registration requirement. But, we would conclude that Section 9795.1 embodies the recidivist philosophy and reflects a belief that first-time and lesser offenders are capable of reform and rehabilitation if given an opportunity to do so under the still-punitive aegis of relatively lighter discipline, as well as the threat of harsher treatment next time, should there be a next time. …

*Gehris*, 54 A.3d at 878-79 (OISR).[11]

To this analysis, we add the following points. A statute is ambiguous when there are at least two reasonable interpretations of the text. *See Freedom Med. Supply*, 131 A.3d at 984; *Warrantech Consumer Prod. Servs. v. Reliance Ins. Co. in Liquidation*, 96 A.3d 346, 354-55 (Pa. 2014); *Delaware County v. First Union Corp.,* 992 A.2d 112, 118 (Pa. 2010). In construing and giving effect to the text, "'we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear." *Roethlein v. Portnoff Law Assoc.*, 81 A.3d 816, 822 (Pa. 2013), *citing Mishoe v. Erie Ins. Co.*, 824 A.2d 1153, 1155 (Pa. 2003). *Accord Commonwealth v. Office of*

---

[11] In a footnote, Justice Todd's dissent posits that our reading of the statute means that an individual who lures a child into a motor vehicle, kidnaps the child, and forces the child to participate in prostitution and child pornography would need only register as a sex offender for ten years. Dissenting slip op. at 7, n. 1. However, Section 9795.1 makes clear an individual deemed to be a sexually violent predator is subject to lifetime registration. Furthermore, 42 Pa.C.S §9795.4 states, "[a]fter conviction, but before sentencing, a court shall order an individual convicted of an offense specified in Section 9795.1 (relating to registration) to be assessed by the board." 42 Pa.C.S §9795.4(a). Included in those specified crimes are all the crimes referenced by the dissent. 42 Pa.C.S §9795.1. Following the assessment by the Board, the district attorney may request a hearing allowing the court to determine whether the Commonwealth has proved the offender to be a sexually violent predator by clear and convincing evidence. 42 Pa.C.S. §9795.4(e). Thus, contrary to the dissent's assertion, those convicted of multiple crimes which normally would be subject to only a ten year registration period may indeed be subject to lifetime registration regardless of this decision; indeed, the dissent's hypothetical, properly analyzed, shows the balanced, graduated operation of the scheme.

*Open Records*, 103 A.3d 1276, 1285 (Pa. 2014) (party's argument that statutory language is ambiguous "depends upon improperly viewing it in isolation;" when language is properly read together and in conjunction with rest of statute, legislative intent is plain). The United States Supreme Court also takes a contextual approach in assessing statutes and in determining predicate ambiguity. *See generally King v. Burwell*, ___ U.S. ___, 135 S.Ct. 2480, 2489 (2015) ("If the statutory language is plain, we must enforce it according to its terms. But oftentimes the meaning — or ambiguity — of certain words or phrases may only become evident when placed in context. So when deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme." (internal quotation marks and citations omitted)); *Yates v. United States*, ___ U.S. ___, 135 S.Ct. 1074, 1081-82 (2015) ("Whether a statutory term is unambiguous, however, does not turn solely on dictionary definitions of its component words. Rather, '[t]he plainness or ambiguity of statutory language is determined [not only] by reference to the language itself, [but as well by] the specific context in which that language is used, and the broader context of the statute as a whole.' Ordinarily, a word's usage accords with its dictionary definition. In law as in life, however, the same words, placed in different contexts, sometimes mean different things." (internal citations omitted)).

Neither the OISA nor the OISR in *Gehris* cited this precept advising a contextual approach to assessing legislative intent and statutory ambiguity. The OISR's approach in considering the overall statute, including legislative policy findings, in ascertaining the legislative intent and finding Section 9795.1 to be ambiguous is consonant with that principle. *Compare Roethlein*, 81 A.3d at 822-24 (disapproving lower court's focus on two words ("excess charges") in Loan Interest and Protection Law, 53 P.S. §§7101-7505, in isolation; in discerning plain meaning of statute, Court considered definitional

provisions, other substantive provisions, and statute's title and preamble, ultimately concluding language was not ambiguous).

Second, also respecting whether the language, considered in context, is reasonably amenable to multiple interpretations, there is a cautionary factor here that was not present in *Gehris* or *Merolla*. Those cases involved appeals from the judgment of sentence: the issue of ten years versus lifetime registration was actually contested at the sentencing proceeding. Sentencing in this case occurred over four years before *Merolla* and there was no dispute: the prosecutor, appellee and the trial judge all believed this first-time offender, who was not a sexually violent predator, was subject to ten-year registration.[12] The dispute here arose only when PSP, ten years later, and after *Merolla* had been decided, acted upon a different interpretation of the text.

The implications of Megan's Law II figured in trials and guilty pleas on a daily basis in the Commonwealth. The fact that it never occurred to those in the trenches in this particular case in 2002 that a first-time, non-violent and non-SVP offender could be subject to anything but the lower-tier period of registration provides some further measure of support to the conclusion that the provision, considered in context, is at least reasonably amenable to multiple interpretations.

Third, although we have indeed held the registration provision is not punitive for purposes of constitutional challenges, the circumstances here suggest the question of strict construction may be more complex and nuanced than the Court had reason to

---

[12] It is true the registration term was not part of a negotiated plea, but the shared understanding may have factored into counsel's advice to his client respecting entry of an open plea. The question of whether a negotiated plea agreement which included obligations under sexual offender registration legislation is enforceable under SORNA is pending before the Court in *Commonwealth v. Martinez*, Nos. 30, 32 & 34 MAP 2015 (argued the same day as this appeal) (construing SORNA's effect upon such plea agreements reached under Megan's Law II). Appellee does not forward a contract-based argument similar to the one at issue in *Martinez*.

appreciate previously. Whether the statute is deemed a penal one subject to the rule of lenity and strict construction or not (we do not deny the force in PSP's reliance upon existing authority), the fact is that interpretations — and predictions — of the statute's effect have to be made by different persons and entities at different times: prosecutors in charging decisions, defense counsel in rendering advice, defendants in determining courses of action, trial judges in imposing sentence, courts on appeal, PSP in enforcement, and then the defense, prosecution and courts repeated again if the defendant is charged with violating his or her registration obligation. Given the obvious burden of registration and the potentially serious criminal consequences of a lapse, as recognized in the *Gehris* OISR, 54 A.3d at 878, to state the law is not "penal" is little answer to a defendant who had good reason to believe he had done all required of him, only to find himself staring at lifetime registration. At a minimum, the circumstances suggest appellee's argument premised upon the imperative for consistent interpretation of a statute having both penal and non-penal consequences, as recognized by the United States Supreme Court in *Leocal*, *supra*, has more force than the Court had reason to believe in addressing questions of strict construction and the rule of lenity in other contexts, including the narrower context presented in *Gehris*.[13,14]

---

[13] We caution we do not purport to resolve the question whether registration provisions such as this one warrant strict construction, but merely seek to highlight points revealed here, which were not made apparent in *Gehris*.

[14] We respect that Justice Todd remains unconvinced by the analysis in the *Gehris* OISR, as supplemented by the Court today. However, we obviously disagree with our learned colleague's suggestion, Dissenting slip op. at 7, that we have not explained how the language of Section 9795.1(b)(1), when viewed in context, is ambiguous. *See Gehris*, 54 A.3d at 878-70 (OISR) (explaining a close reading of Section 9795.1, as a whole, and the legislative findings and declaration of policy at 42 Pa.C.S. §9791, make clear the primary concern of the statute is with sexually violent predators and not with nonviolent offenders).

Fourth and finally, and returning to the subject of predicate ambiguity, we note there is some validity in the point made in the dissent below that it would be absurd and unreasonable if a single act, giving rise to a single prosecution yielding two convictions for overlapping predicate offenses, subjected an offender to lifetime registration.[15]

In conclusion, we hold the statute requires an act, a conviction, and a subsequent act to trigger lifetime registration for multiple offenses otherwise triggering a ten-year period of registration. Accordingly, the award of mandamus relief is hereby affirmed.

Former Justice Eakin did not participate in the consideration or decision of this matter.

Chief Justice Saylor and Justices Baer and Donohue join the opinion.

Justice Donohue files a concurring opinion.

Justice Todd files a dissenting opinion.

Justice Wecht files a dissenting opinion.

---

[15] Contrary to PSP's position, we do not believe the General Assembly's passage of virtually identical language in SORNA signals approval of *Merolla* or counsels a different result. As PSP otherwise recognizes, the Statutory Construction Act provides such a presumption regarding legislative intent may arise "when a court of last resort" has construed statutory language and the General Assembly, in a subsequent enactment, opts not to change the language. *See* 1 Pa.C.S. §1922(4); *Commonwealth v. Wanamaker*, 296 A.2d 618, 624 (Pa. 1972). *Merolla* was not a decision by this Court. Furthermore, the stated purpose of SORNA was not directed to PSP's consideration, but primarily focused upon bringing Pennsylvania sex offender registration law into compliance with the federal Adam Walsh Child Protection and Safety Act. *See* 42 Pa.C.S. §9799.10; *see also In re J.B.*, 107 A.3d 1, 3 (Pa. 2014). Additionally, PSP cites no affirmative indicator, in the legislative history or otherwise, that the General Assembly was focused upon, or intending to approve, *Merolla*. Finally, for the reasons stated in the text, we do not believe the "literal" reading adopted in *Merolla* accurately reflects the legislative intent.