J-S05033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| BRIAN KEITH LEFEVER, | |
| Appellant | No. 781 MDA 2016 |

Appeal from the Judgment of Sentence March 18, 2016
in the Court of Common Pleas of Lancaster County
Criminal Division at No.: CP-36-CR-0005604-2014

BEFORE: BENDER, P.J.E., PANELLA, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MARCH 20, 2017**

Appellant, Brian Keith Lefever, appeals from the judgment of sentence imposed on March 18, 2016, following his jury conviction of one count of unlawful contact with a minor,[1] one count of criminal attempt of indecent assault,[2] and two counts of corruption of minors.[3]  On appeal, Appellant challenges the weight of the evidence and the legality of his sentence.  We

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6318(a)(1).

[2] 18 Pa.C.S.A. §§ 901(a) and 3126(a)(8).

[3] 18 Pa.C.S.A. § 6301(a)(1)(i).

vacate the judgment of sentence in part and remand for imposition of a twenty-five-year period of registration under SORNA.[4]

We take the underlying facts and procedural history in this matter from the trial court's July 7, 2016 opinion and our independent review of the certified record.

> After 7:00 p.m. on May 27, 2013, Amanda Jean Ready and her friend, Lauren Parish, were finishing dinner at the Panera Bread restaurant on Fruitville Pike in Manheim Township, Lancaster County, Pennsylvania. [Appellant][5] and victim [one][a] were sitting at a booth approximately two feet away from Ms. Ready so that she and [Appellant] were about five feet apart. Ms. Ready was facing [Appellant] and victim [one] and Ms. Parish had her back to them.
>
> > [a] Both victims are relatives who have the same first, middle and last initials. The [trial c]ourt [] refer[s] to them as victim [one] and victim [two] in [its] opinion.
>
> Initially, victim [one] was sitting next to [Appellant], but later was sitting on his lap for a few minutes prior to moving to [Appellant's] other side. While Ms. Ready was observing them, [Appellant] and victim [one] were engaged in prolonged, closed mouth kissing on the lips for approximately ten seconds on each occasion. This activity had continued for about [twenty] to [thirty] minutes when Ms. Ready reported what she saw to an employee who told the manager. The manager told Ms. Ready that he would not call the police so Ms. Ready did so. Ms. Ready

---

[4] Sex Offender Registration and Notification Act, 42 Pa.C.S.A. §§ 9799.10–9799.41.

[5] We briefly note that Appellant is the victims' estranged biological father. Both Appellant and the victims' mother were long-term drug abusers and had no contact with the victims until 2012 or 2013. Mother's sister adopted both girls, as well as a younger sibling.

believed [Appellant] to be in his [forties] or [fifties] and victim [one] to be a [nine] year old girl.

Ms. Parish stated that her attention was drawn to [Appellant] by Ms. Ready. She described a man and a child "like kissing and making out and he was pulling her on his lap and just inappropriate behavior." When victim [one] was on his lap, Ms. Parish said [Appellant's] hands were "on her hips, kind of all over her." In addition to the lips, she also observed [Appellant] kissing victim [one] on the cheek and neck. Ms. Parish indicated that victim [one] appeared to be [twelve] or [thirteen] years old. Ms. Parish turned around to observe what was occurring behind her about a dozen times and described it as something a dating couple would do.

No criminal charges were filed in connection with this incident until after the incident with victim [two].

On August 19, 2014, at about lunch time, John Moore was in the parking lot of the Pizza Hut restaurant on Manheim Pike in Lancaster County, Pennsylvania, which is adjacent to a McDonald's restaurant. His vehicle was parked facing a grayish Saab about five to ten feet away in the McDonald's lot. He saw [Appellant] in the driver's seat of the Saab and victim [two] in the passenger seat. He saw [Appellant] rubbing victim [two] up and down from her breast to her stomach, mouth to mouth kissing for [thirty] seconds to a minute and [Appellant] pulling victim [two's] head to his chest and then down to his lap. Mr. Moore observed this activity for approximately ten minutes, called to report it and then drove from the Pizza Hut lot to the McDonald's lot and parked close to [Appellant's] vehicle.

Mr. Moore tapped on the window of a SUV parked next to [Appellant] and told the woman occupying it, who was also watching what was occurring, that he had called the police. He then stood almost directly in front of [Appellant's] vehicle and watched [Appellant] continue what Mr. Moore had previously seen. When the police arrived, victim [two] got out of the Saab and said, "Oh, shit, the police are here" and ran into the McDonald's restaurant.

Diane Geib was in the McDonald's parking lot eating her lunch when [Appellant] and victim [two] got into the vehicle parked next to hers. Ms. Geib saw victim [two] half sitting on

[Appellant's] lap with her back to the steering wheel. She saw [Appellant] give victim [two] three quick kisses on the lips. When Ms. Gelb looked over again, she saw victim [two] lying flat on the seat with [Appellant] on top of her. Victim [two] looked scared and had her hand on [Appellant's] chest. Ms. Geib was going to call the police when Mr. Moore tapped on her window and told her he had already done so.

Detective Christopher Dissinger of the Manheim Township Police Department testified that both victim [one] and [two] were under [eighteen] years of age at the time of these incidents[b] and [Appellant] was over [eighteen] years of age.[c] He also obtained the cell phones of [Appellant] and victim [two], obtained consent to conduct a forensic search and retrieved certain messages. Among these messages were the following from [Appellant] to victim [two] prior to the events in the McDonald's parking lot:

"Ah, you're so sweet. I want you so bad."
"all I need is you, baby"
"I will kiss you so much it will just become normal"
"aww, you make me want you so bad"
"just want to kiss you so bad"
"lol, God, I want you so bad. Is that weird"[d]

[b] Victim [one] was born August 26, 1999, and victim [two] was born May 27, 2001.

[c] [Appellant's] date of birth is April 3, 1969.

[d] The quoted messages do not include all of the messages offered into evidence or victim [two's] responses. All of the messages from both parties are reflected in the trial transcript at pages [eighty-three] to [eighty-nine].

In addition to the Commonwealth's evidence summarized above, [Appellant] presented evidence at trial.

John Struble testified that he was employed at Panera Bread on the date of the incident involving victim [one], and that he received a complaint from a customer about [Appellant] and a young girl in a booth. Mr. Struble, who was wearing his employee name tag, took his manager's binder with paperwork

in it to a table in view of [Appellant] to see what was happening. Mr. Struble saw nothing inappropriate during the [twenty] minute period he was in the area and stated [Appellant] and victim [one] looked like they were playing a game on a cell phone.

Victim [one] testified she was at Panera Bread with [Appellant] and they were sitting in a booth playing a game on [Appellant's] cell phone. [Appellant] gave her a quick kiss on the lips once and nothing inappropriate occurred.

Victim [two] testified that she and [Appellant] were at McDonald's for about an hour and spent [forty-five] minutes inside the restaurant. She and [Appellant] were in the car for [ten] to [fifteen] minutes waiting for her [adoptive mother] to text victim [two] that [she] was at home. During this period, [Appellant] gave her a quick kiss and she put her head on his shoulder once or twice. Victim [two] denied anything inappropriate occurred, and offered her explanation for the text messages with [Appellant].

Finally, the [adoptive mother] of victims [one] and [two] testified that she never had concerns about [Appellant's] behavior.

At the conclusion of the trial, [Appellant] was found guilty of all charges.

(Trial Court Opinion, 7/07/16, at 2-6) (record citations omitted).

On March 18, 2016, following review of the pre-sentence investigation report, the trial court sentenced Appellant to an aggregate term of incarceration of not less than nine nor more than twenty-three months to be followed by a seven-year term of probation. The court also determined Appellant was subject to a lifetime registration requirement under SORNA, as a Tier III offender because he had "been convicted of these offenses[.]" (N.T. Sentencing, 3/18/16, at 23).

- 5 -

On March 23, 2016, Appellant filed post-sentence motions, including a motion to vacate the jury verdict as against the weight of the evidence. On April 13, and 19, 2016, the trial court denied the motions. The instant, timely appeal followed. On May 20, 2016, the trial court directed Appellant to file a concise statement of errors complained of on appeal. *See* Pa.R.A.P. 1925(b). Appellant filed a timely Rule 1925(b) statement on June 15, 2016. *See id.* On July 7, 2016, the trial court issued an opinion. *See* Pa.R.A.P. 1925(a).

On appeal, Appellant raises the following questions for our review.

I.   Did the trial court err in finding that the jury's verdict of guilty of two counts of corruption of minors, attempt to commit indecent assault, and unlawful contact with a minor was [not] against the weight of the evidence and so contrary thereto as to shock the conscience, where the testimony of the witnesses to each incident was so contradictory as to render any verdict based on this testimony unreliable?

II.   Where [Appellant] was convicted on the same date of one count of unlawful contact with [a] minor, a violation of 18 Pa.C.S.[A.] § 6318, and one count of criminal attempt to commit indecent assault, a violation of 18 Pa.C.S.[A.] § 901 and 18 Pa.C.S.[A.] § 3126(a)(8), and the offenses were docketed to the same information number, should he have been sentenced to [twenty-five] years of sex offender registration pursuant to 42 Pa.C.S.[A.] §§ 9799.14 and 9799.15, rather than lifetime registration?

(Appellant's Brief, at 6).[6]

---

[6] Appellant acknowledges that he did not raise his legality of sentence issue below, but correctly notes that challenges to the legality of sentence are non-waivable and may be raised for the first time on appeal. *See*
*(Footnote Continued Next Page)*

In his first issue, Appellant claims the verdict was against the weight of the evidence because the witnesses' testimony was "so contradictory as to render any verdict based on this testimony unreliable." (Appellant's Brief, at 20). We disagree.

Our scope and standard of review of a weight of the evidence claim is as follows:

> The finder of fact is the exclusive judge of the weight of the evidence as the fact finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses.

> As an appellate court, we cannot substitute our judgment for that of the finder of fact. Therefore, we will reverse a jury's verdict and grant a new trial only where the verdict is so contrary to the evidence as to shock one's sense of justice. A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when the figure of Justice totters on her pedestal, or when the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience.

> Furthermore, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Boyd*, 73 A.3d 1269, 1274-75 (Pa. Super. 2013) (*en banc*) (citation and internal quotation marks omitted). "Thus, the trial

*(Footnote Continued)* ————————————

*Commonwealth v. Dickson*, 918 A.2d 95, 99 (Pa. 2007) ("challenges to sentences based upon their legality" are not subject to waiver); (*see also* Appellant's Brief, at 6).

court's denial of a motion for a new trial based on a weight of the evidence claim is the least assailable of its rulings." **Commonwealth v. Diggs**, 949 A.2d 873, 879-80 (Pa. 2008), *cert. denied*, 556 U.S. 1106 (2009) (citation omitted).

Here, the trial court rejected Appellant's weight of the evidence claim; it discussed the differences between the various witnesses' testimonies and pointed out that those differences could be explained by the different vantage points and periods of time during which they viewed Appellant and the victims. (**See** Trial Ct. Op., at 7-8). We agree. Moreover, fact-finding and credibility determinations are matters for the jury. The record reflects that the jury chose to credit the testimony of the Commonwealth's witnesses and chose to reject the defense's theory of the case. The jury, sitting as finder of fact, was free to believe the Commonwealth's witnesses and to disbelieve the defense. **See Commonwealth v. Griscavage**, 517 A.2d 1256, 1259 (Pa. 1986). "[I]t is for the fact-finder to make credibility determinations, and the finder of fact may believe all, part, or none of a witness's testimony." **Commonwealth v. Lee**, 956 A.2d 1024, 1029 (Pa. Super. 2008), *appeal denied*, 964 A.2d 894 (Pa. 2009) (citation omitted). Thus, Appellant's weight of the evidence claim is without merit.

In his second issue Appellant challenges the legality of his sentence pursuant to the Pennsylvania Supreme Court's decisions in **Commonwealth v. Lutz-Morrison**, 143 A.3d 891 (Pa. 2016) and **A.S. v. Pennsylvania**

*State Police*, 143 A.3d 896 (Pa. 2016). (*See* Appellant's Brief, at 27). He claims that the trial court erred in imposing life-time registration rather than a twenty-five year period of registration.[7] (*See id.* at 6). We agree.

We briefly note that this is a pure question of law and therefore, our standard of review is *de novo* and our scope of review is plenary. *See Commonwealth v. Wolfe*, 106 A.3d 800, 802 (Pa. Super. 2014), *appeal dismissed*, 145 A.3d 727 (Pa. 2016).

In *Lutz–Morrison*, our Supreme Court clarified that Section 9799.14(d)(16) of SORNA "requires an act, a conviction, and a subsequent act to trigger lifetime registration for multiple offenses otherwise subject to a fifteen- or twenty-five-year period of registration." *Lutz–Morrison*, *supra* at 895; *accord A.S.*, *supra* at 908 (applying registration requirements of Megan's Law II). Here, the trial court imposed the lifetime registration requirement based solely on the multiple Tier I and II offenses,[8] included in the same information, of which the jury convicted Appellant. Under *Lutz–Morrison*, Appellant's conviction of multiple Tier I and Tier II offenses contained in a single criminal complaint, did not subject him to a Tier III

---

[7] *See* 42 Pa.C.S.A. § 9799.15.

[8] *See* 42 Pa.C.S.A. § 9799.14.

lifetime registration requirement because there was no "subsequent act" following his conviction. *Lutz–Morrison*, *supra* at 895.[9]

Therefore, we vacate Appellant's judgment of sentence in part, as to his classification as a Tier III offender, and remand to the trial court for the imposition of a twenty-five–year registration requirement under Section 9799.15(a)(2).

Judgment of sentence affirmed in part, and vacated in part. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/20/2017

---

[9]  The Commonwealth strenuously argues that the instant matter is distinguishable from *Lutz-Morrison* because it involves two separate events with multiple victims that took place over one year apart. (*See* Commonwealth's Brief, at 15-16). However, *Lutz-Morrison* clearly requires an act followed by a conviction, followed by another act and a separate conviction. *See Lutz-Morrison*, *supra* at 895. This is simply not present in the instant matter.