**[J-71-2021] [MO: Todd, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| EASTERN UNIVERSITY ACADEMY CHARTER SCHOOL, | : | No. 16 EAP 2021 |
| | : | |
| | : | Appeal from the Order of |
| Appellant | : | Commonwealth Court entered on |
| | : | July 10, 2020 (reargument denied |
| | : | September 11, 2020) at 1167 CD |
| v. | : | 2019 affirming the Order entered on |
| | : | August 14, 2019 by the Charter |
| | : | School Appeal Board at 2018-04. |
| SCHOOL DISTRICT OF PHILADELPHIA, | : | |
| | : | ARGUED:  October 27, 2021 |
| Appellee | : | |

## CONCURRING OPINION

**JUSTICE WECHT**                                           **DECIDED:  December 22, 2021**

Charter schools do not, and cannot, exist absent the express will of the General Assembly, and without the enactment of authorizing legislation.  With the passing of the Charter School Law in 1997,[1] our legislature breathed life into these unconventional educational institutions for Pennsylvania.  The lawmakers stated their intention to provide opportunities—outside of the core structure of public school districts—for alternative forms of education that could "improve pupil learning," "increase learning opportunities for all pupils," "encourage the use of different and innovative teaching methods," "create new professional opportunities for teachers, including the opportunity to be responsible for the learning program at the school site," "provide parents and pupils with expanded choices in the types of educational opportunities that are available within the public school system," and "hold the schools established under [the Charter School Law] accountable

---

[1]      24 P.S. §§ 17-1701-A *et seq.*

for meeting measurable academic standards and provide the school with a method to establish accountability systems."[2]

Because charter schools are entirely creatures of statute, their authorizing legislation necessarily must be comprehensive. Such laws must set forth with precision and clarity all of the rights, obligations, and duties of both the charter school and the supervising school district, and must outline all of the procedures necessary for the creation, renewal, and dissolution of a charter. Each Charter School Law case that comes before our Court is a reminder that, despite lofty goals, this legislation is not as comprehensive or precise as it could, and must, be. For example, in *Discovery Charter School v. School District of Philadelphia*,[3] this Court highlighted three such omissions, remarking (unanimously) that, even though the Charter School Law is "an exhaustive statutory framework governing charter authorization, renewal, and revocation," it nonetheless lacks a "procedure to amend the material terms of a charter, a time frame or substantive standard governing a local school board's evaluation of an amendment request, or an appellate procedure conferring jurisdiction upon the [Charter School Appeal Board] when a school district acts or fails to act on a charter amendment request."[4] Today's case brings to light still more omissions and instances of imprecision in this consequential statutory construct. I begin with the glaring gap that lies at the heart of the present dispute.

The process for obtaining and renewing a charter operates as follows. The petitioning party must file an application with the school board of the district in which the

---

[2]     *Id.* § 17-1702-A(1)-(6) (capitalization and numbering omitted).

[3]     166 A.3d 304 (Pa. 2017).

[4]     *Id.* at 318.

party seeks to establish the charter school, substantively addressing seventeen different criteria.[5]  Following a public hearing,[6] the school district may issue the charter for up to five years.[7]  Each year, the school district's board must "assess whether each charter school is meeting the goals of its charter."[8]  As the term of the charter progresses, the charter school may seek renewal of the charter for up to another five years.  Before the charter may be renewed, the governing school board must "conduct a comprehensive review,"[9] and may "choose not to renew based on any of the following:"

> (1) One or more material violations of any of the conditions, standards or procedures contained in the written charter signed pursuant to section 1720-A.1
>
> (2) Failure to meet the requirements for student performance set forth in 22 Pa. Code Ch. 5 (relating to curriculum) or subsequent regulations promulgated to replace 22 Pa.Code Ch. 5 or failure to meet any performance standard set forth in the written charter signed pursuant to section 1716-A.2
>
> (3) Failure to meet generally accepted standards of fiscal management or audit requirements.
>
> (4) Violation of provisions of this article.
>
> (5) Violation of any provision of law from which the charter school has not been exempted, including Federal laws and regulations governing children with disabilities.
>
> (6) The charter school has been convicted of fraud.[10]

---

[5]    24 P.S. § 17-1719-A.

[6]    *Id.* § 17-1717-A(3)(d).

[7]    *Id.* § 17-1720-A-(a).

[8]    *Id.* § 17-1728-A(a).

[9]    *Id.* § 17-1728-A(c).

[10]   *Id.* § 17-1729-A(a).

The question before the Court requires interpretation of the language chosen by the General Assembly to identify the point(s) in time at which a nonrenewal decision may (and/or must) occur. The district may choose to revoke or not to renew a charter "[d]uring the term of the charter" or "at the end of the term of the charter."[11] The phrase "at the end" is devilishly ambiguous. A few hypotheticals suffice to illustrate the problem with the language used in the legislation.

Assume that a person goes to a dentist for a root canal. The dentist assures the patient that the pain she is experiencing will cease "at the end of the procedure." Now, assume that a person attends a cooking class, and is assured by the master chef that "at the end of the class," she will know how to make three different types of pasta. In both of these scenarios, "at the end" reasonably can be interpreted to mean "by the end."

Now consider a person who goes to see the latest 3D movie at the local theater. Upon paying for an admission ticket, the theater employee hands the patron a pair of 3D glasses and instructs the patron that he must return the glasses "at the end of the movie." No one reasonably would believe that use of "at the end" means the patron must stand up and rush to the return receptacle, dropping the glasses therein to ensure that they were returned "by the end" of the movie (*i.e.*, at or before the precise moment that the film concludes). The use of "at the end" in this scenario reasonably can be interpreted as permitting return of the glasses after the movie ends or within a reasonable time thereafter.

Given the existence of countervailing yet mutually plausible interpretations, the statutory term is ambiguous.[12] In such situations, our job is to strive to decipher what the

---

[11] *Id.*

[12] *See A.S. v. Pennsylvania State Police*, 143 A.3d 896, 905-06 (Pa. 2016) ("A statute is ambiguous when there are at least two reasonable interpretations of the text.").

General Assembly intended. The Majority examines the statutory language used in the Charter School Law as a whole, and demonstrates reasonably and contextually that the General Assembly did not actually construct or intend a hard deadline for decisions to revoke or non-renew charters that would fall on the exact date that the charter expires. My own close review leads me to agree that the General Assembly did not intend "at the end" to mean "by the end," and did not intend for all revocation/nonrenewal decisions to be made no later than the precise date of the expiration of the charter.

This interpretation presents a significant problem for the charter school in this case, which urged this Court to find within the bounds of the Charter School Law a firm deadline that we conclude was not provided for in the text of the statute by the General Assembly. As a matter of law, the charter school's position is incorrect. But it is far from silly. In view of the imprecision in the statute, the charter school's arguments carry some weight. And that brings me to more of the General Assembly's omissions in this purportedly comprehensive statute.

The most conspicuous missing piece is a deadline by which a school district must act. By now, it is clear that the deadline cannot be the date of the charter's expiration. There is no realistic way that a school district can perform its statutory duties, such as its comprehensive review of the charter's performance, or its duty to provide the school with due process protections, by that fixed point in time. The school district must be afforded some amount of time after the charter expires to hold hearings, and to make its decision. But how long can a school district take to decide? While the charter school may continue to operate during the review process,[13] that ability appears to exist only until the review process is completed. If the ultimate decision by the school board is not to renew the charter, the operation must cease. This leaves charter schools, students, parents, and

---

[13] *See* Maj. Op. at 25 n.15.

even taxpayers in a perpetual state of uncertainty. A state of temporary existence offers no solace given the weighty educational and financial interests in play during the renewal process.

On the other hand, the school district's decision-making process is not always easy or straightforward. The comprehensive nature of that process can be laborious and saturated with complex and amorphous data. This becomes even more problematic when school districts, such as the vast School District of Philadelphia, oversee dozens of charter schools, with multiple renewals every year.

Undoubtedly, the process can be onerous and burdensome. But there is also the possibility of delay by the school district, as there is no legal compulsion to act with any sense of urgency due to the absence of a statutory time limit by which the district's board must complete its process. This is inequitable for charter schools that are operating on a temporary basis. The lack of any deadline means that, while the charter school is up and running this morning, the rug can be yanked from underneath it this afternoon, tomorrow, next week, or even next year. As the statute currently reads, the school district and its board can take as long as they want to decide. No entity (much less a school educating Pennsylvania's children) should be forced to operate while the proverbial Sword of Damocles hovers overhead, ready to fall at some unknown point.

With respect to the absence of a statutory deadline, the Majority raises the possibility that imposition of a strict timeline might "encourage schools to rush their renewal decisions, without fully reviewing or evaluating charter schools, to the detriment of pupils, staff, the charter schools, and the public in general."[14] The Majority further cautions that a strict deadline for renewal could incentivize charter schools "to impede the

---

[14] *Id.* at 25.

review process and hinder school districts in fulfilling their statute-mandated functions so as to evade nonrenewal decisions and attain automatic renewal of their charters."[15] These are indeed valid concerns, further illustrating why we cannot interpret the statute to require that the decision be made by the time the initial charter expires. But that does not mean that there cannot, or should not, be some real and actual deadline after the charter expires by which the school district must act. It is both inequitable and absurd to tether school districts to no timeline whatsoever after the charter expires while the charter school is forced to operate on a temporary basis with all of the attendant uncertainty for the school, its teachers and staff, and its students.

The Charter School Law also reads as incomplete without a provision requiring each school district to provide meaningful notice of its progress in its renewal evaluation to the otherwise unaware charter school. As things stand, the charter schools must continue in the dark after the charter technically expires, the General Assembly having failed to mandate that the school district provide periodic notice of its progress so as, at a minimum, to allow the charter school to act, as best as possible, with the most current information.

In *Discovery*, we identified three significant omissions from the Charter School Law. This case presents at least two more. The lack of an end date for nonrenewal decisions and the lack of a meaningful notice obligation reflect legislative choices, however unfortunate and ill-considered they may be. It is the General Assembly's job to fill in statutory gaps, to resolve policy concerns such as those raised by the Majority, and to decide appropriate time limits as it sees fit. Our job is only to interpret the statute. We cannot rewrite it or improve it. We cannot add terms that simply aren't there. Today's Majority correctly interprets the Charter School Law and declines to add words that the

---

[15]     *Id.*

General Assembly itself has not written. With this disposition (and with the reasoning that underlies it) I agree.