J-A13024-23

2023 PA Super 134

COMMONWEALTH OF PENNSYLVANIA  :  IN THE SUPERIOR COURT OF
                             :         PENNSYLVANIA
                             :
            v.               :
                             :
                             :
JACK CLARK GARNER            :
                             :
          Appellant          :  No. 597 MDA 2022

Appeal from the Order Entered March 21, 2022
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0003867-2010

BEFORE:   BOWES, J., LAZARUS, J., and STEVENS, P.J.E.[*]

OPINION BY LAZARUS, J.:                    **FILED: JULY 27, 2023**

Jack Clark Garner appeals from the order, entered in the Court of Common Pleas of Dauphin County, dismissing his petition for limited access to his criminal record pursuant to 18 Pa.C.S.A. § 9122.1.  After careful review, we affirm.

At the time of the underlying offenses, Garner was an elected constable for South Hanover Township.  On two separate occasions,  May 18, 2010 and May 20, 2010, Garner, while driving his private vehicle, followed and stopped two cars in Lower Paxton Township.  Garner stopped the first vehicle in a private driveway, around 4:30 p.m., after allegedly witnessing the driver[1] of the car cut off another vehicle.  Garner parked his vehicle no more than 10 feet behind the driver's car and "flash[ed the driver] a badge real quick before

_____

[*] Former Justice specially assigned to the Superior Court.

[1] There were no passengers in the first vehicle that Garner stopped.

putting it back in his pocket." N.T. Jury Trial, 4/11/11, at 46. Garner asked the driver to produce her driver's license, insurance information, and vehicle registration. *Id.* The driver testified she "thought [she] was dealing with a police officer" and that she did not feel free to leave. *Id.*

With regard to the second stop, Garner allegedly witnessed the driver and passenger "flick cigarettes" out the windows. *Id.* at 83. Garner stopped the second vehicle, around noon in a beauty school parking lot, parking his private vehicle close to the stopped car. Garner told the driver that it was a $300 fine for littering, *id.*, and asked the driver for her driver's license and vehicle registration. *Id.* at 85. Garner then told the driver to "stay by the car," *id.*, took her documents back to his vehicle, and then returned to the car three minutes later where he asked for the passenger's information. *Id.* at 85-86. When the passenger was unable to produce her documents, Garner asked her for her name, address, and date of birth, which she gave him. *Id.* at 86. Garner then returned the driver her documents and told her that he could not issue her a warning because he was off duty. *Id.* at 87. Both the driver and passenger of the second car testified that Garner, who was not in uniform, identified himself as "Officer So-and-So" and quickly flashed a badge that "looked like a star." *Id.* at 82, 97, 113. The driver and passenger both testified that they did not feel free to leave after Garner pulled over their vehicle. *Id.* at 85, 114. Finally, the driver and passenger testified that they believed Garner was a police officer. *Id.* at 87, 123.

Following a three-day trial, the jury convicted Garner of three counts of official oppression, 18 Pa.C.S.A. § 5301(1),[2] and two counts of impersonation of a public servant, 18 Pa.C.S.A. § 4912.[3]  Both crimes are classified as second-degree misdemeanors, punishable by up to two years in prison.  *See* 18 Pa.C.S.A. § 1104(2).  On June 29, 2011, the court sentenced Garner to 4-24 months of intermediate punishment, with the first four months to be served in restrictive confinement at the Dauphin County Work Release Center, followed by 8 years of probation.  Garner was also ordered to complete 250 hours of community service and pay fines and costs.[4]  Garner filed post-sentence motions, which were denied.

Garner filed a timely notice of appeal claiming that the jury's verdict was against the weight of the evidence.  On July 9, 2012, this Court affirmed

---

[2] The crime of official oppression is defined, in part, as:

> A person acting or purporting to act in an official capacity or taking advantage of such actual or purported capacity commits a misdemeanor of the second degree if, knowing that his conduct is illegal, he:  (1) subjects another to arrest, detention, search, seizure, mistreatment, dispossession, assessment, lien or other infringement of personal or property rights[.]"

18 Pa.C.S.A. § 5301(1).

[3] A person commits the crime of impersonation of a public servant where "he falsely pretends to hold a position in the public service with intent to induce another to submit to such pretended official authority or otherwise to act in reliance upon that pretense to his prejudice."  18 Pa.C.S.A. § 4912.

[4] At sentencing, the court accepted Garner's resignation as a township constable and Garner was cautioned not to hold public office in the future.

Garner's judgment of sentence. **See Commonwealth v. Garner**, 55 A.3d 126 (Pa. Super. 2012) (unpublished memorandum decision).[5] Garner did not seek allowance of appeal in the Pennsylvania Supreme Court.

On August 8, 2013, Garner filed a Post Conviction Relief Act (PCRA) petition, **see** 42 Pa.C.S.A. §§ 9541-9546, that was later amended by counsel. The petition raised several claims of trial counsel's ineffectiveness. Following an evidentiary hearing and the issuance of Pa.R.Crim.P. 907 notice of the PCRA court's intent to dismiss the petition, the court denied relief on February 17, 2016.

Garner filed a collateral appeal and, on January 11, 2017, our Court affirmed the PCRA court's denial of Garner's petition. **See Commonwealth v. Garner**, 160 A.3d 251 (Pa. Super. 2017) (Table). Garner filed an unsuccessful petition for allowance of appeal with the Pennsylvania Supreme Court. **Id.**, 170 A.3d 1035 (Pa. 2017).[6]

---

[5] On appeal, our Court determined that the jury's verdict was supported by the facts of record where Garner "clearly intended to act in an official capacity" when he subjected the two drivers and one passenger to investigative detentions, even though he was not authorized to perform such in his official role as a constable. **Commonwealth v. Garner**, No. 1355 MDA 2011 (Pa. Super. filed July 9, 2012) (unpublished memorandum decision), at 6, citing Trial Court Opinion, 10/21/11. **See** 18 Pa.C.S.A. § 5301. Moreover, with regard to the two charges of impersonation of a public servant, the court also found that the verdict was supported by the record where Garner flashed his constable badge to both drivers of the two vehicles and they testified "that they perceived [Garner] to be a police officer." **Garner**, **supra** at 5-7.

[6] On September 25, 2017, Garner filed a *pro se* motion to terminate his probation, which the trial court granted on October 2, 2017. On December
*(Footnote Continued Next Page)*

On December 13, 2021, Garner filed a Petition for Order for Limited Access, seeking limited access to his three section 5301.1 convictions (official oppression) and two section 4912 convictions (impersonation).[7] ***See*** Pa.R.Crim.P. 791;[8] 18 Pa.C.S.A. § 9122.1. The Commonwealth filed a response to the petition, claiming that Garner did not qualify for limited access as his case fell within one of the statutory exceptions under section 9122.1(b).

---

22, 2017, Garner filed a *pro se* motion for return of seized property (blue raincoat and beige sport coat); the Commonwealth filed an answer, not objecting to returning the coats. On January 10, 2018, the trial court granted the motion and returned the coats to Garner. On February 13, 2018, Garner filed an answer and new matter to the return of property petition, requesting the Commonwealth return his "Gold, Five[-]Pointed Star Badge with an inscription[,] 'PENNSYLVANIA STATE CONSTABLE.'" Defendant's Additional New Matter, 2/13/18, at ¶ 10. The Commonwealth filed an answer claiming Garner was not entitled to return of the property pursuant to Pa.R.Crim.P. 588, as the request was untimely. On February 26, 2019, the trial court entered another order denying the relief requested in Garner's additional new matter.

[7] Specifically, Garner answered the following, relevant question in his petition:

> 12. The specific charges, as they appear on the charging document, to be subject to limited access and applicable dispositions (attach additional sheets if needed):
>
> 3 cts. 18 Pa.C.S. 5301.1 Official Oppression
>
> 2 cts. 18 Pa.C.S. 4912 Impersonation
>
> Guilty – Jury, Confinement, IPP, Probation, Community Service, Fines & Fees, all Consecutive

Petition for Limited Access, 12/13/21, at ¶ 12.

[8] Rule 791, adopted in 2016, provides the procedures for requesting and ordering an order for limited access as provided in the statute.

On February 2, 2022, the court denied Garner's petition for limited access, concluding that he was ineligible for limited access because he had been convicted, within the previous 20 years of "four or more offenses punishable by imprisonment of two or more years." 18 Pa.C.S. § 9122.1(b)(2)(ii)(B).

On February 14, 2022, Garner filed a motion for reconsideration. The court rescinded its prior order denying Garner's petition and scheduled argument on the matter for March 18, 2022. Following argument, the trial court denied Garner's limited access petition on March 21, 2022. Garner filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Garner raises the following issues for our consideration:

(1) Is [Garner] eligible for limited access under 18 Pa.C.S.A. § 9122.1(b)(2)(ii)(B)?

(2) [D]oes the statutory phrase[ in section 9122.1(b)(2)(ii)(B),] "4 or more offenses[,]" refer not to the number of [a defendant's] "convictions," but, rather, to the number of "offenses"?

Appellant's Brief, at 4.

Garner's issues are interrelated; therefore, we will address them together. Garner's claims involve the trial court's interpretation of the term "offense" as found in section 9122.1(b)(2)(ii)(B). Specifically, Garner asserts that while he was **convicted** of five second-degree misdemeanors, his convictions "arose from two **offenses**"—impersonating a public servant and official oppression. Defendant's Response to Rule to Show Cause, 2/2/22, at ¶¶ 10, 12. Thus, he contends, the trial court improperly denied his petition

for limited access under section 9122.1 because he was not convicted of "**four or more offenses** punishable by imprisonment of two or more years." 18 Pa.C.S.A. § 9122.1(b)(2)(ii)(B) (emphasis added).

In matters of statutory interpretation, our scope of review is plenary, and our standard of review is *de novo*. ***See Commonwealth v. DeNapoli***, 197 A.3d 771, 773 (Pa. Super. 2018).

> In interpreting any statute, appellate courts must take note of the principles of statutory interpretation and construction. The principal objective of interpreting a statute is to effectuate the intention of the legislature and give effect to all of the provisions of the statute. In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. **When analyzing particular words or phrases, we must construe them according to rules of grammar and according to their common and approved usage.** Words of a statute are to be considered in their grammatical context. Furthermore, we may not add provisions that the General Assembly has omitted unless the phrase is necessary to the construction of the statute. A presumption also exists that the legislature placed every word, sentence and provision in the statute for some purpose and therefore courts must give effect to every word.

***Commonwealth v. Morris***, 958 A.2d 569, 578-79 (Pa. Super. 2008) (emphasis added) (internal quotations and citations omitted).

Section 9122.1, titled "Petition for Limited Access," is found in Subchapter C of the Criminal History Record Information Act (CHRIA), 18 Pa.C.S.A. §§ 9102-9183. Generally, "CHRIA concerns [the] collection, maintenance, dissemination, disclosure, and receipt of criminal history record information." ***Commonwealth v. Pa. State Police***, 146 A.3d 814 (Pa.

Cmwlth. 2016). Section 9122.1 gives a trial court the discretion to enter "an order, under specific circumstances, limiting the dissemination of a defendant's criminal [record] history" solely to criminal justice agencies. *See* Pa.R.Crim.P. 791, Comment. *See DeNapoli*, *supra* at 774; *id.* at 775 ("[Section 9122.1] offers a form of civil relief to qualified individuals under a narrow set of circumstances."). Specifically, a trial court's order entered under section 9122.1 prohibits a court or the Administrative Office of Pennsylvania Courts from disseminating certain criminal history record information to an individual or a non-criminal justice agency. *See* 18 Pa.C.S.A. § 9121(b)(3).

Limited access relief, which was "originally intended to be an expansion of expungement relief," *id.*, is considered "civil, rather than penal, in nature." *Id.* Like the process of expungement, which is meant to "ameliorate the 'difficulties and hardships' that often result from an arrest record," *Commonwealth v. Giulian*, 141 A.3d 1262, 1270 (Pa. 2016) (citation omitted), the limited access statute is a tool that benefits those individuals who are able to remain conviction-free, of certain offenses, for 10 or more years. *See* 18 Pa.C.S.A. § 9122.1(a).

Section 9122.1 provides, in pertinent part:

**§ 9122.1 Petition for limited access.**

**(a) *General rule*.** Subject to the exceptions in subsection (b) and notwithstanding any other provision of this chapter, upon petition of a person who has been **free from conviction** for a period of 10 years **for an offense punishable by one or more years in prison** and has completed payment of all court-ordered

- 8 -

restitution and the fee previously authorized to carry out the limited access and clean slate limited access provisions, the court of common pleas in the jurisdiction where a conviction occurred **may** enter an order that **criminal history record information** maintained by a criminal justice agency pertaining to a qualifying misdemeanor or an ungraded offense which carries a maximum penalty of no more than five years be disseminated only to a criminal justice agency or as provided in section 9121(b.1) and (b.2) (relating to general regulations).

**(b) Exceptions.** An order for limited access under this section shall **not** be granted for any of the following:

\* \* \*

(2) An individual who meets any of the following:

\* \* \*

(ii) Has been **convicted** within the previous 20 years of:

\* \* \*

(B) four or more **offenses** punishable by imprisonment of two or more years.

18 Pa.C.S. § 9122.1(b)(2)(ii)(B) (emphasis added). Thus, even if a petitioner technically qualifies for limited access to his or her criminal record under subsection 9122.1(a), the trial court still has the discretion to deny the petition. *See id.* at § 9122.1(a) ("court of common pleas in the jurisdiction where a conviction occurred **may** enter an order that [limits access to a defendant's] criminal history record information") (emphasis added).

Here, Garner was convicted of three counts of official oppression and two counts of impersonation of a public servant; both crimes are second-

degree misdemeanors, punishable by up to two years in prison. **See** 18 Pa.C.S.A. § 1104(2). Garner avers that "[t]he Statutory Construction Act and other applicable law lead to the conclusion that the [i]ntent of the General Assembly was to count each separate <u>offense</u>, not to count each separate <u>count</u> of each of that offense" under section 9112.1(b)(2)(ii)(B). Defendant's Response to the Rule to Show Cause, 2/2/22, at ¶ 15 (emphasis in original). We disagree.

In essence, Garner would have us read the word "different" into subsection 9122.1(b)(2)(ii)(b) to mandate that the limited access exception only applies when a petitioner has been convicted within the previous 20 years of four or more **different** offenses. **See Giulian**, **supra** at 1268 (admonishing appellate court from "alter[ing] the text of [expungement statute] in narrowing the scope of the provision by adding word "the" to statutory language). We are specifically prohibited from construing statutes in that manner. **See Giulian**, **supra** at 1268 ("Accordingly, we have stressed courts should not add, by interpretation, a requirement not included by the General Assembly."); **Commonwealth v. Glenn**, 233 A.3d 842, 845 (Pa. Super. 2020) ("We may not add words or phrases in construing a statute unless the added words are necessary for a proper interpretation, do not conflict with the obvious intent of the statute, and do not in any way affect its scope and operation.").

Here, Garner was charged with more than one count of the same crime because there were multiple victims from two separate criminal episodes. To

read section 9122.1 to find Garner only committed two "offenses" because he was charged more than once for the **same** crime would be giving him a "volume discount"[9] or a "limited access windfall." ***Commonwealth v. Mastromarino***, 2 A.3d 581, 588 (Pa. Super. 2010) (Court rejecting defendant seeking "volume discount" because crimes occurred in one continuous spree) (citation omitted). Specifically, if we were to accept Garner's interpretation of section 9211.1(b)(2)(ii)(B), a defendant, who is convicted of an unlimited number of counts of the same crime,[10] would be eligible for limited access under section 9122.1 after remaining conviction-free for 10 years, but an individual who is convicted of four counts of four different second-degree misdemeanors would be ineligible for limited access of their criminal records even after remaining conviction-free for 19 years. ***See Giulian***, ***supra*** at 1274 (Wecht, Justice, concurring) (untenable interpretation of expungement statute where individual would be free to recidivate in perpetuity by reoffending every five years and never be precluded from expungement, but defendant who goes more than 16 years without reoffending from last offense(s) cannot have earliest crimes expunged because less than five years elapsed between earliest and latest crimes).

---

[9] Although this term is most often used in the sentencing context, we nonetheless find it relevant to Garner's arguments advanced on appeal.

[10] By the same logic, a defendant could commit unlimited counts of two or three different second-degree misdemeanors and still be eligible for limited access under section 9122.1.

While section 9122.1 does not define the term "offense," we recognize that "the best indication of the General Assembly's intent is the plain language of the statute," which should not be read in isolation.  1 Pa.C.S.A. § 1921(a). *See also* 18 Pa.C.S.A. § 105 (Principles of construction); *Commonwealth v. Wright*, 14 A.3d 798, 814 (Pa. 2011).  Section 106 of the Crimes Code, titled "Classes of offenses," states that, as a general rule, "[a]n offense defined by this title for which a sentence of death or of imprisonment is authorized constitutes **a crime**."  18 Pa.C.S.A. § 106(a) (emphasis added).  Thus, an offense is synonymous with a crime under the Crimes Code.  *See also id.* at § 106(b)(7) ("A crime is a misdemeanor of the second degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than two years."); *Smith v. Pa. State Horse Racing Com.*, 535 A.2d 596, 598 (Pa. 1988) ("Although the term 'offense' is not specifically defined in the Crimes Code, the term generally connotes a crime or misdemeanor - - a breach of the criminal laws.").[11]

_____

[11] Moreover, 18 Pa.C.S.A. § 9102, within Subchapter A of CHIRA, defines "criminal history record information," in relevant part, as:

> **Information collected** by criminal justice agencies concerning individuals, **and arising from** the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments informations[,] or **other formal criminal charges and any dispositions arising therefrom**.

18 Pa.C.S.A. § 9102.  Furthermore, CHIRA is broken down into 10 subchapters as follows:
*(Footnote Continued Next Page)*

Instantly, Garner was criminally charged with three counts of official oppression and two counts of impersonating a public servant. *See* Criminal Docket, 6/30/11, at 3. Following trial, the jury found Garner guilty of all charges. *See id.* at 4 (delineating disposition of each charge as guilty). Mindful of the precept that "we must read the words [of a statute] in their context and with a view to their place in the overall statutory scheme,'" *A.S. v. Pa. State Police*, 143 A.3d 896, 906 (Pa. 2016) (citation omitted), we conclude that under section 9102, Garner's criminal history record information includes the disposition of **all five** of his criminal charges. Therefore, the term "offense," as used in section 9122.1, includes **each of the crimes** for which Garner was convicted.[12] Thus, a petitioner need not be convicted of four or more **different** crimes for section 9112.1(b)(2)(ii)(B)'s exception to apply.

---

- Subchapter A (General Provisions);
- Subchapter B (Completeness and Accuracy);
- **Subchapter C (Dissemination of Criminal History Record Information)**;
- Subchapter D (Security);
- Subchapter E (Audit);
- Subchapter F (Individual Right of Access and Review);
- Subchapter F.1 (Crime Victim Right of Access);
- Subchapter G (Responsibility of Attorney General);
- Subchapter H (Public Notice); and
- Subchapter I (Sanctions).

18 Pa.C.S.A. §§ 9101-9183.
[12] Technically, the term "offense," as used in section 9122.1, is not only a descriptive term, but also temporally relevant.

Accordingly, we conclude that even though Garner was charged with committing two different second-degree misdemeanors, he was convicted of five offenses for purposes of the limited access statute.[13] *Commonwealth v. Frisbie*, 485 A.2d 1098, 1099 (Pa. 1984) ("a single act [that] injures multiple victims may form the basis for multiple sentences without violating double jeopardy").

Order affirmed.[14]

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/27/2023

---

[13] Although not binding precedent, we note that in *Commonwealth v. Harper*, 201 A.3d 857 (Pa. Super. 2018) (Table), our Court treated the defendant's guilty pleas to two possession with intent to deliver (cocaine) charges, that occurred years apart, as two offenses for purposes of applying the limited access statute.

[14] Garner's argument that his convictions should be treated differently under section 9122.1 because they were "non-violent" offenses is of no moment. The statute does not make any such distinction, but, rather, states that the offenses be "punishable by imprisonment of two or more years." 18 Pa.C.S.A. § 9122.1(b)(2)(ii)(B). *See also* 18 Pa.C.S.A. § 106 (a)(5) (general rule states "[a]n offense defined by this title for which a sentence of . . . imprisonment is authorized constitutes a crime. The classes of crime are . . . misdemeanor of the second degree[.]"); *id.* at 106(b)(7) ("A crime is a misdemeanor of the second degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than two years.").