**[J-13A-2023, J-13B-2023, J-13C-2023 and J-13D-2023]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**WESTERN DISTRICT**

**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| HTR RESTAURANTS, INC. D/B/A/ SIEBS PUB, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS, 3382 BABCOCK BOULEVARD, PITTSBURGH, PA 15327, | : : : : : : | No. 21 WAP 2022<br><br>Appeal from the Order of the Superior Court entered August 10, 2021 at No. 902 WDA 2020, reversing in part and vacating in part the Order of the Court of Common Pleas of Allegheny County entered July 24, 2020 at No. GD-20-006901, and remanding. |
| Appellant | : : : : : | |
| v. | : : | |
| | : : | ARGUED: April 18, 2023 |
| ERIE INSURANCE EXCHANGE, 100 ERIE INSURANCE PLACE, ERIE, PA 16530, | : : : | |
| Appellee | : : | |
| JOSEPH TAMBELLINI, INC. D/B/A JOSEPH TAMBELLINI RESTAURANT, 5701 BRYANT STREET, PITTSBURGH, PA 15206, | : : : : : | No. 22 WAP 2022<br><br>Appeal from the Order of the Superior Court entered August 10, 2021 at No. 903 WDA 2020, reversing in part and vacating in part the Order of the Court of Common Pleas of Allegheny County entered July 24, 2020 at No. GD-20-005137, and remanding. |
| Appellant | : : : : | |
| v. | : : | |
| ERIE INSURANCE EXCHANGE, 100 ERIE INSURANCE PLACE, ERIE, PA 16530, | : : : | ARGUED: April 18, 2023 |
| Appellee | : : | |
| HTR RESTAURANTS, INC. D/B/A/ SIEBS PUB, INDIVIDUALLY AND ON BEHALF OF A CLASS OF SIMILARLY SITUATED PERSONS, 3382 BABCOCK BOULEVARD, PITTSBURGH, PA 15327, | : : : : : | No. 23 WAP 2022<br><br>Appeal from the Order of the Superior Court entered August 10, 2021 at No. 902 WDA 2020, reversing in part and vacating in part |

|  |  |  |
|---|---|---|
| Appellee | : | the Order of the Court of Common |
| | : | Pleas of Allegheny County entered |
| | : | July 24, 2020 at No. GD-20-006901, |
| v. | : | and remanding. |
| | : | |
| | : | ARGUED: April 18, 2023 |
| ERIE INSURANCE EXCHANGE, 100 ERIE | : | |
| INSURANCE PLACE, ERIE, PA 16530, | : | |
| | : | |
| Cross-Appellant | : | |
| | : | |


|  |  |  |
|---|---|---|
| JOSEPH TAMBELLINI, INC. D/B/A | : | No. 24 WAP 2022 |
| JOSEPH TAMBELLINI RESTAURANT, | : | |
| 5701 BRYANT STREET, PITTSBURGH, PA | : | Appeal from the Order of the |
| 15206, | : | Superior Court entered August 10, |
| | : | 2021 at No. 903 WDA 2020, |
| Appellee | : | reversing in part and vacating in part |
| | : | the Order of the Court of Common |
| | : | Pleas of Allegheny County entered |
| v. | : | July 24, 2020 at No. GD-20-005137, |
| | : | and remanding. |
| | : | |
| ERIE INSURANCE EXCHANGE, 100 ERIE | : | ARGUED: April 18, 2023 |
| INSURANCE PLACE, ERIE, PA 16530, | : | |
| | : | |
| Cross-Appellant | : | |
| | : | |

## OPINION

**JUSTICE WECHT**                 **DECIDED: DECEMBER 8, 2023**

Prior to and during the COVID-19 pandemic, Erie Insurance Exchange ("Erie") insured various businesses across the Commonwealth through policies that protected against business interruption losses. During the pandemic, federal and state authorities ordered the closure of certain businesses, including restaurants and other retail establishments. When these insured businesses filed claims for their losses caused by COVID-19-related interruptions, Erie uniformly denied them. Several of the insured

businesses, including Joseph Tambellini, Inc. and HTR Restaurants, Inc., individually and on behalf of a class of similarly situated plaintiffs (hereafter, "Plaintiffs"), sued Erie in courts of common pleas across the Commonwealth.

Because of the factual and legal overlap among these claims, and upon Plaintiffs' motion, the Allegheny County trial court ordered all state-wide litigation to be coordinated in Allegheny County for all pre-trial and trial purposes under Rule of Civil Procedure 213.1. Erie appealed to the Superior Court. The Superior Court affirmed in part and reversed in part. According to the Superior Court, the trial court exceeded the authority of Rule 213.1 by ordering the coordination of similar actions against Erie that had not yet been filed. The Superior Court further held that Plaintiffs were parties who were empowered by Rule 213.1 to file the motion for coordination. Upon the parties' cross-appeals, we granted review of both holdings.

Construing the plain language of Rule 213.1, we agree with the Superior Court that the trial court lacked authority to coordinate actions that had not yet been filed. We further hold that Erie waived any argument that Plaintiffs could not seek coordination when it failed to raise this issue in the trial court. We therefore affirm the Superior Court's order.

## I. Background

On April 17, 2020, and June 17, 2020, respectively, Plaintiffs filed civil actions against Erie in Allegheny County for breach of contract and seeking declaratory judgments concerning Erie's denial of their claims for business interruption losses incurred as a result of the COVID-19-related shutdowns. Plaintiffs' actions were the first of many similar actions that would be filed across the Commonwealth. Shortly thereafter, Capriccio Parkway, LLC and Capriccio, Inc., individually and on behalf of similarly situated plaintiffs (the "Philadelphia Plaintiffs") and Perfect Pots, LLC (the "Lancaster Plaintiff")

filed nearly identical actions against Erie in Philadelphia and Lancaster Counties, respectively.

Over the following weeks and months, many more actions would be filed against Erie based upon substantially the same facts and legal theories. Because of the common questions of law and fact presented in these actions, on June 24, 2020, Plaintiffs, joined by the Philadelphia and Lancaster Plaintiffs, moved for the coordination of actions in Allegheny County under Rule 213.1 of the Pennsylvania Rules of Civil Procedure.

Rule 213.1 provides for the coordination of actions in different counties as follows:

(a) In actions pending in different counties which involve a common question of law or fact or which arise from the same transaction or occurrence, any party, with notice to all other parties, may file a motion requesting the court in which a complaint was first filed to order coordination of the actions. Any party may file an answer to the motion and the court may hold a hearing.

(b) The court in which the complaint was first filed may stay the proceedings in any action which is the subject of the motion.

(c) In determining whether to order coordination and which location is appropriate for the coordinated proceedings, the court shall consider, among other matters:

(1) whether the common question of fact or law is predominating and significant to the litigation;

(2) the convenience of the parties, witnesses and counsel;

(3) whether coordination will result in unreasonable delay or expense to a party or otherwise prejudice a party in an action which would be subject to coordination;

(4) the efficient utilization of judicial facilities and personnel and the just and efficient conduct of the actions;

(5) the disadvantages of duplicative and inconsistent rulings, orders or judgments;

(6) the likelihood of settlement of the actions without further litigation should coordination be denied.

(d) If the court orders that actions shall be coordinated, it may

> (1) stay any or all of the proceedings in any action subject to the order, or
>
> (2) transfer any or all further proceedings in the actions to the court or courts in which any of the actions is pending, or
>
> (3) make any other appropriate order.

(e) In the order of coordination, the court shall include the manner of giving notice of the order to all parties in all actions subject thereto and direct that specified parties pay the costs, if any, of coordination. The court shall also order that a certified copy of the order of coordination be sent to the courts in which the actions subject to the order are pending, whereupon those courts shall take such action as may be appropriate to carry out the coordination order.

(f) The final order disposing of a coordinated action or proceeding shall be certified and sent to the court in which the action was originally commenced to be filed of record.[1]

In addition, the Comment to Rule 213.1 describes the meaning and intent of the Rule as follows:

> Rule 213.1 addresses a subject formerly not covered by the rules of civil procedure, the coordination of actions brought in courts of common pleas of different counties. It provides a procedure to regulate actions which are brought in different counties but which involve common questions of law or fact or which arise from the same transaction or occurrence. The basis for the rule is the same as for Rule 213, i.e., the avoidance of multiple trials and proceedings in these actions and the resultant economy to both the parties and the judicial system.

> A problem sought to be relieved by this rule is the instance where actions proceed simultaneously in more than one county and no court will defer to another and no party is willing to litigate the claim in a county other than the one of his choosing. This situation leads to duplication of effort by the courts and the parties and may result in inconsistent rulings and orders.

---

[1]    Pa.R.Civ.P. 213.1.

Pennsylvania does not have legislation governing this area. There are no guidelines similar to those of the federal Manual for Complex Litigation, nor is there a supervisory body such as the Judicial Panel on Multidistrict Litigation and none is proposed by the new rule. Rather, the rule provides a mechanism for the various courts of common pleas to work together when litigation crosses county lines.

The rule covers five subjects: the request for coordination (subdivision (a)), the stay of proceedings (subdivision (b)), the criteria for coordination (subdivision (c)), the order of coordination (subdivision (d)), and notice of the order (subdivision (e)).

Subdivision (a) provides the procedure for obtaining an order of coordination: motion, answer and hearing. The procedure is deliberately left general and flexible. The two stated requirements are that the motion must be "with notice to all other parties" and that the request be made to "the court in which a complaint was first filed". Notice must be given to all parties in all actions which are to be coordinated. The court in which the first complaint was filed establishes a forum for the coordination proceedings.

Subdivision (b) provides the court before which a motion is pending with the necessary authority to stay all actions which eventually may be subject to the order of coordination.

Subdivision (c) sets forth in the criteria to be considered by the court in determining whether to enter an order of coordination. Several of the criteria specified by subdivision [(c)] are similar to the criteria for certification of a class action under Rule 1708. The similarity is not surprising since the two provisions have the identical function, as expressed by Rule 1708, of determining whether the particular procedural device is "a fair and efficient method of adjudicating the controversy."

Subdivision (d) is concerned with the order of coordination. The court is authorized to stay proceedings in any action subject to the order, transfer an action to another court or "make any other appropriate order." Under subdivision (b) the court is empowered to stay actions which are the subject of the motion for coordination pending the determination of the motion. Subdivision (d) authorizes the court to further stay actions once the decision to coordinate has been made.

Subdivision (d)(2) governs the transfer of actions. This type of transfer is new to Pennsylvania practice. It has long been the practice that an action may be transferred only under Rule 1006(d) by the court in which the action is pending to another court for the convenience of the parties and witnesses or in order to obtain a fair and impartial trial. In subdivision (d)(2), the court is reaching out to and taking control of actions pending not only in

the forum county but in other counties of the Commonwealth as well. The power of the court under Rule 213.1 is statewide.

Subdivision (d)(2) mentions transfer to the "court or courts in which any of the actions is pending." This language implies that the order of coordination need not necessarily provide for only one coordinated action. Rather, if appropriate, there might be more than one coordinated action. Actions which are ready for trial might be the subject of one coordinated action while recently commenced actions might be the subject of a second coordinated action. Regionalization of certain litigation might be beneficial to the courts and parties under certain circumstances. However, the propriety of such procedures would depend on numerous factors, including the risk of inconsistent and duplicative orders. These coordination alternatives are only illustrative of the imaginative procedures available under the rule.

Subdivision (d)(3) provides an opportunity for creative judicial management. Unlike Section 1407 of the Judicial Code of the United States, 28 U.S.C.A. § 1407, which provides for the transfer of actions "for coordinated or consolidated pretrial proceedings", the purposes for which actions may be coordinated are not specified in Rule 213.1. The court may "make any other appropriate order." For instance, actions may be consolidated generally, for pretrial proceedings, for determination of specified issues of law or fact or for trial. The order is limited only by its function of providing a fair and efficient method of adjudicating the controversy.

Subdivision (e) concerns notice of the order. The court will specify the manner of giving notice to all parties in all actions subject to the order. A certified copy of the order is to be sent to the courts in which the actions to be coordinated are pending so that they might "take such action as may be appropriate to carry out the coordination order."

In providing a framework rather than detailed procedures, the rule applies to both complex and simpler litigation which crosses county lines. One court will be able to take charge of multiple class actions commenced in several counties. One court will be able to oversee litigation arising from two petitions to open a judgment, one petition filed in the county in which the judgment was entered and the other in the county to which it was transferred.[2]

---

2      Pa.R.Civ.P. 213.1, cmt.

Plaintiffs sought coordination in Allegheny County with (1) the Philadelphia and Lancaster actions against Erie on the same coverage issue; and (2) all other similar present and future actions filed against Erie in Pennsylvania courts. Erie opposed the motion, and attached a list of all ongoing actions against Erie across the Commonwealth. Every plaintiff on this list was afforded notice of the coordination motion, many of whom consented to coordination. Several plaintiffs in similar actions outside of Allegheny County opposed coordination.

On July 23, 2020, following oral argument, the Allegheny County Court of Common Pleas (the "trial court") granted the motion to coordinate. In its coordination order, the court ordered the Philadelphia and Lancaster actions to be coordinated with the Allegheny County action for all pre-trial matters, trial, and final resolution. The trial court ordered the clerk of courts to send copies of the order to the courts of common pleas in Philadelphia and Lancaster and to all other plaintiffs and defendants, and directed Erie to serve the order on counsel for all other "similarly situated Plaintiffs."[3] The trial court also required Erie to notify it of "any further similar actions filed against" it, directing that "those actions will be transferred to this Court and made part of the proceedings coordinated by this Order."[4] Without acknowledging that Rule 213.1(a) requires the trial court to afford parties the opportunity to file an answer to the coordination motion, the trial court ordered that any party in any action identified to the court as raising common questions of law or fact had thirty days from the date of the order or fourteen days from receiving notice of the order to object to being part of the coordinated proceedings. If there was no objection, the case would be coordinated and transferred to Allegheny County. Upon objection, the

---

[3] Tr. Ct. Order, 7/23/2020, at ¶ 2.

[4] *Id.* at ¶ 3.

trial court would consider whether the action should not be part of the coordinated proceedings.

Following the trial court's coordination order, several plaintiffs outside of Allegheny County with similar actions pending against Erie objected to coordination. The trial court has not yet resolved these objections.

Shortly thereafter, on July 31, 2020, Plaintiffs requested the trial court to appoint their counsel as lead counsel over the coordinated proceedings with sole authority over pleadings, motions, discovery, settlement negotiations, settlement, and the allocation of fees among various attorneys "doing work in the case."[5] The trial court has not yet ruled on this request.

On August 21, 2020, Erie filed a notice of appeal to the Superior Court from the coordination order. In its statement of errors complained of on appeal,[6] Erie asserted that coordination under Rule 213.1 was available only for cases that already had been filed, and therefore were "pending" at the time of the coordination motion.[7] According to Erie, the trial court abused its discretion by ordering the coordination of actions that did not yet exist.

The trial court issued an opinion in support of its order.[8] Relying upon the broad discretion afforded by Rule 213.1(d)(3) and the comment thereto empowering it to "make any other appropriate order" in service of coordination,[9] the trial court explained that it would serve the interest in judicial economy to coordinate all similar actions against Erie,

---

[5]     Plaintiff's Proposed Case Management Order, 7/31/2020 at 1-9.

[6]     *See* Pa.R.A.P. 1925(b).

[7]     *See* Pa.R.Civ.P. 213.1(a), (d)(2), and (e).

[8]     *See* Pa.R.A.P. 1925(a).

[9]     Pa.R.Civ.P. 213.1(d)(3), cmt. ¶ 8.

including those that were forthcoming. The trial court indicated that its order afforded the parties to all future cases with notice and the opportunity to object, and that it would consider whether such actions should be part of the coordinated proceeding.

On appeal to the Superior Court, Erie advanced two arguments against coordination. First, Erie asserted that Rule 213.1 did not entitle Plaintiffs to seek coordination with actions from outside of Allegheny County. Rather, according to Erie, only the parties to actions outside of Allegheny County could request to have their case coordinated with the Allegheny County action. The Superior Court disagreed. Relying upon the plain language of Rule 213.1(a), the court held that "any party," including Plaintiffs, could request coordination of actions filed outside of Allegheny County.[10]

In its second argument, Erie asserted that the trial court misapplied Rule 213.1 by granting coordination not only to similar "pending" actions, but also to cases that had not been filed at the time of the coordination motion. The Superior Court agreed, holding that the Rule does not permit coordination of cases that are not filed at the time of the motion for coordination. Because Rule 213.1 repeatedly limited coordination to "pending" actions in Subsections (a), (d)(2), and (e), the Superior Court held that the intent of the Rule was to limit coordination to actions that already had been initiated.[11] Although the Rule did not define "pending," the Superior Court applied its understanding of "pending" in other contexts as referring to an action that already is in existence.[12] Consequently, the

---

[10]     *HTR Restaurants, Inc. v. Erie Ins. Exch.*, 260 A.3d 978, 985 (Pa. Super. 2021).

[11]     *Id.* at 985-86.

[12]     *Id.* at 986 (citing *Getty v. Getty*, 221 A.3d 192 (Pa. Super. 2019) (defining "pending" as an undetermined proceeding or an action that has begun but not yet concluded); *In re McCutcheon*, 846 A.2d 801 (Pa. Ct. Jud. Disc. 2004) (holding that a case is "pending" only "after it is filed and is awaiting decision or settlement; after it is begun but is unfinished")).

Superior Court held that the coordination order exceeded the authority of Rule 213.1 by purporting to apply to actions not yet filed.

The court reasoned that Section 213.1(d)(3) vested discretion in the trial court only to the extent that the Rule permitted coordination; it vested no discretion in the trial court to exceed the bounds of the Rule. Relying upon Rule 213.1(a), the Superior Court opined that coordinating cases that had not yet been filed would deprive the parties in those cases of the opportunity afforded in Rule 213.1(a) to file an answer to the motion for coordination and, if needed, to be heard at a hearing on the motion before the trial court orders coordination.

Because the order exceeded what the Rule authorized, the Superior Court reversed the order to the extent that it applied to cases that had not been filed at the time of the motion for coordination. The Superior Court remanded to the trial court to resolve the outstanding objections of plaintiffs opposing coordination.

Erie and Plaintiffs cross-appealed. This Court granted allowance of appeal of two issues:

On Plaintiffs' appeal:

Whether the Superior Court erred as a matter of law in finding that coordination under Pennsylvania Rule of Civil Procedure 213.1 can only be applied to actions which have been filed at the time coordination is sought?[13]

And on Erie's appeal:

Did the Superior Court endorse an erroneous, unprecedented and dangerous expansion of Pa.R.Civ.P. 213.1 contrary to its plain language and which threatens to disrupt this and other litigations pending in multiple Counties throughout the Commonwealth, in holding that a litigant who is not a "party" to other cases in "different counties," has standing to file a Rule

---

[13] *HTR Restaurants, Inc. v. Erie Ins. Exch.*, 279 A.3d 40 (Pa. 2022) (*per curiam*).

213.1 motion to transfer such cases to the County of the nonparty's choice?[14]

An order directing coordination under Rule 213.1 is an interlocutory order that is appealable as of right.[15]  Appellate courts review a trial court's coordination order for an abuse of discretion.[16]

When we are called upon to construe a Rule of Civil Procedure, the issue presented is a question of law and our scope of review is plenary.[17]  Similar to canons of statutory construction, "[t]he object of all interpretation and construction of rules is to ascertain and effectuate the intention of the Supreme Court."[18]  To this end, we construe every rule, if possible, "to give effect to all of its provisions."[19]  "When the words of a rule are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."[20]  It is only when the words of a rule are not explicit that we

---

[14]     *HTR Restaurants, Inc. v. Erie Ins. Exch.*, 279 A.3d 38, 39 (Pa. 2022) (*per curiam*).

[15]     Pa.R.A.P. 311(c) ("An appeal may be taken as of right from an order in a civil action or proceeding changing venue, transferring the matter to another court of coordinate jurisdiction, or declining to proceed in the matter on the basis of forum *non conveniens* or analogous principles.").

[16]     *See Washington v. FedEx Ground Package Sys., Inc.*, 995 A.2d 1271, 1277, (Pa. Super. 2010); *Abrams v. Uchitel*, 806 A.2d 1, 7 (Pa. Super. 2002); *Wohlsen/Crow v. Pettinato Associated Contractors & Engineers, Inc.,* 666 A.2d 701, 703, (Pa. Super. 1995).

[17]     *Zappala v. Brandolini Prop. Mgmt., Inc.*, 909 A.2d 1272, 1280 (Pa. 2006).

[18]     Pa.R.Civ.P. 127(a).

[19]     *Id.*, (b).

[20]     *Id.*

may ascertain the intent by reference to other matters.[21]  In ascertaining the intent of a rule, we are guided by a non-exhaustive set of presumptions.[22]

As we have explained in the context of statutory construction, ambiguity occurs "when there are at least two reasonable interpretations of the text."[23]  When we are

---

[21]  Such other matters include:

(1) the occasion and necessity for the rule; (2) the circumstances under which it was promulgated; (3) the mischief to be remedied; (4) the object to be attained; (5) the prior practice, if any, including other rules and Acts of Assembly upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous history of the rule; and (8) the practice followed under the rule.

Pa.R.Civ.P. 127(c).

[22]  In particular, courts may be guided by the following presumptions, among others:

(a) That the Supreme Court does not intend a result that is absurd, impossible of execution or unreasonable;

(b) That the Supreme Court intends the entire rule or chapter of rules to be effective and certain;

(c) That the Supreme Court does not intend to violate the Constitution of the United States or of this Commonwealth;

(d) That if the Supreme Court has construed the language used in a rule or statute, the Supreme Court in promulgating a rule on the same subject matter which employs the same language intends the same construction to be placed upon such language;

(e) That the Supreme Court intends to favor the public interest as against any private interest;

(f) That no rule shall be construed to confer a right to trial by jury where such right does not otherwise exist.

Pa.R.Civ.P. 128.

[23]  *A.S. v. Pennsylvania State Police*, 143 A.3d 896, 906 (Pa. 2016).

construing and giving effect to the text, "we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear."[24]

## II. "Pending"

Plaintiffs, as appellants, argue that this Court's principles of construction support interpreting Rule 213.1 to allow the coordination of related cases that are not yet filed. Plaintiffs stress that Rule 213.1(d)(3) affords broad discretion to the trial court to "make any other appropriate order" and is not limited to "pending" actions. Plaintiffs believe that the term "pending" in the context of Rule 213.1(a) is ambiguous and may, in some circumstances, refer to imminent events.[25] Although some courts have defined pending and impending distinctly,[26] Plaintiffs distinguish such cases on the basis that they interpreted statutes containing both terms, which required the courts to give different meanings to each. With regard to Rule 213.1, however, which uses "pending," but not "impending," Plaintiffs believe that "pending" encompasses cases that are impending or imminent. Plaintiffs similarly distinguish Rule 213.1 from authorities addressing whether an action is "pending" or "final."[27] Deciding when an action ceases to be pending and is instead final or adjudicated, does not, according to Plaintiffs, shed any light on the meaning of Rule 213.1.

---

[24]     *Id.*

[25]     *See In re Morley*, 2020 WL 7414173 at *2 (Mich. Ct. App. Dec. 17, 2020) (unpublished) (holding that "pending" could mean "imminent" and "impending"); *State v. Smith*, 436 S.W.3d 751, 763 (Tenn. 2014) (holding that "pending" means "impending"); *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. Ct. App. 2004) (holding that "pending" means that an event is "impending, or about to take place"); *St. Peter Herald v. City of St. Peter*, 496 N.W.2d 812 (Minn. 1993) (providing that "pending civil legal action" meant litigation in process as well as threatened litigation).

[26]     *See, e.g., McCutcheon*, 846 A.2d at 810-11 (holding that rules governing "pending and impending cases" must intend to encompass two distinct types of cases).

[27]     *See, e.g., Getty*, 221 A.3d at 196; *Sch. Dist. of Robinson Twp. v. Houghton*, 128 A.2d 58, 61 (Pa. 1956).

Given what they perceive to be the inherent ambiguity of Rule 213.1, Plaintiffs urge the Court to employ the factors enumerated in Rule 127 to glean the intent behind Rule 231.1.  Addressing the occasion and necessity of the Rule,[28] Plaintiffs argue that the 1990 Explanatory Comment makes clear that the Rule was borne of the need for judicial economy and efficiency.  Plaintiffs believe that the Superior Court's interpretation of "pending" conflicts with these salutary aims and would create unmanageable inefficiencies by allowing potentially scores of "tag-along" cases to proceed separately from the coordinated proceedings.  Such a possibility, in Plaintiff's view, defeats the purpose of coordination in the first place.

Addressing the circumstances under which the Rule was promulgated,[29] Plaintiffs emphasize the Explanatory Comment's indication that the Rule responds to the absence of any guidelines in Pennsylvania similar to multi-district litigation in the federal courts ("MDL") and generally affords trial courts more discretion than their federal counterparts enjoy.[30]

Turning to the mischief to be remedied, the object to be attained, and the prior practices,[31] Plaintiffs assert that the Rule was intended to increase efficiency, to avoid inconsistent verdicts, and to apply across county lines.  According to Plaintiffs, the Superior Court's interpretation of "pending" will lead to needless duplication, inconsistent rulings, and the inevitable exclusion of tag-along cases.

---

[28]    *See* Pa.R.Civ.P. 127(c)(1).

[29]    *Id.*, (c)(2).

[30]    *See* Pa.R.Civ.P. 231.1, cmt.

[31]    Pa.R.Civ.P. 127(c)(3), (4), & (5)

Examining the consequences of the Superior Court's interpretation,[32] Plaintiffs argue that the Superior Court's interpretation would frustrate the purpose of the Rule—to streamline cases capable of resolution in a single court, regardless of when those cases are filed. By contrast, Plaintiffs believe that their interpretation would advance the Rule's purpose. Limiting coordination to actions that already have been filed is, according to Plaintiffs, contrary to the broad flexibility articulated in the Rule's 1990 Explanatory Comment. Relying upon the coordination order entered by the trial court, Plaintiffs assert that any concerns about a party's right to "file an answer to the [coordination] motion" under Rule 213.1(a) is addressed by the trial court's coordination order, which ensured that parties to future-filed cases have an opportunity to file objections after the coordination order has been entered.

Taking the Superior Court's holding to its logical extreme would, according to Plaintiffs, require them to wait until the expiration of the relevant statute of limitations to seek coordination, as only then could they be sure that coordination would cover all similar cases. Plaintiffs suggest that this would be an absurd result, requiring them to wait indefinitely to challenge Erie's conduct and reducing efficiencies. Plaintiffs also assert that filing serial coordination motions is not a solution under the Superior Court's interpretation because being forced to file a new coordination motion every time a tag-along case is filed would vastly slow down the proceedings, further reducing efficiencies.

Addressing the contemporaneous history of the Rule,[33] Plaintiffs rely upon the federal MDL framework which, they assert, uses "pending" to include future-filed actions.

---

[32]    *Id.*, (c)(6).

[33]    *Id.*, (c)(7).

Turning to the practice followed under the Rule,[34] Plaintiffs argue that future-filed cases successfully are being coordinated across the Commonwealth.[35]

Finally, Plaintiffs offer a comparison between Rule 213.1 and the federal MDL statute, underscoring the similarity of the two frameworks. Where the federal MDL statute applies to civil actions that are "pending,"[36] the federal guidelines implementing that statute define "pending" to include future-filed cases.[37] According to Plaintiffs, this Court intended to adopt a framework aligned with the federal MDL device, as demonstrated by the parallel language used in the federal statute and the state Rule.

In response, Erie relies upon the plain language of Rule 213.1 to urge this court to give effect to the unambiguous term "pending."[38] According to Erie, "pending" plainly

---

[34]     *Id.*, (c)(8).

[35]     *See, e.g., Delaware Cty. v. Purdue Pharma. LP, et al.*, No. 2017-008095 (Del. Ct. Com. Pl. Sept. 21, 2018); *Delaware Cty. v. Purdue Pharma. LP, et al.*, Order (Del Ct. Com. Pl. Mar. 26, 2018) ("Defendants shall notify this Court of any further similar actions filed against Defendants, and those actions will be transferred to this Court and made part of the proceedings coordinated by this Order.").

[36]     28 U.S.C. § 1407(a) ("When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings.").

[37]     *See* Rules of Procedure of the United States Judicial Panel on Multidistrict Litigation (JPML), Sec. 7.1, available at https://www.jpml.uscourts.gov/sites/jpml/files/Panel%20Rules-Index_%20Copy-Effective-10-4-2016-Index-Update-10-2-2018.pdf (last viewed June 26, 2023) (addressing "potential tag-along action[s]").

[38]     Erie also argues that Plaintiffs' ambiguity arguments are waived because they were not raised in the courts below or in Plaintiffs' petition for allowance of appeal. *See* Pa.R.A.P. 302(a) (providing that issues not raised in the lower court are waived on appeal). According to Erie, Plaintiffs' argument in the lower courts was confined to the trial court's exercise of discretion and was not based upon legal ambiguity.

Our construction of Rule 213.1 is *de novo*. As such, it is our prerogative to use any interpretive tool that we need. To the extent that Plaintiffs bore any issue preservation obligations with respect to our interpretation of Rule 213.1, we disagree with Erie that Plaintiffs waived their rule construction argument. The trial court granted Plaintiffs' (continued…)

means, as the Superior Court held, actions that already are in existence at the time the coordination motion is filed. Erie asserts that this understanding is supported by caselaw,[39] and it distinguishes all of the cases upon which Plaintiffs rely. According to Erie, Plaintiffs are asking this Court to rewrite the Rule, and to replace the plain meaning of "pending" with something else.

Erie also asserts that Plaintiffs' interpretation of "pending" would wreak havoc in litigation across the Commonwealth, forcing litigants in pending cases to predetermine the fate of cases yet to be filed by unknown litigants. Responding to Plaintiffs' federal MDL comparison, Erie argues that, although the federal MDL statute uses the word "pending," it is the Judicial Panel on Multidistrict Litigation ("JPML"), with authorization from Congress to implement the MDL statute, that created rules that apply coordination to future-filed tag-along cases. Erie insists that such rules would have been unnecessary if "pending" as used in the federal MDL statute also meant "impending."

---

coordination motion. When Erie appealed to the Superior Court, Plaintiffs were the appellees. As such, Plaintiffs had no issue preservation obligations in that court. *See Discovery Charter Sch. v. Sch. Dist. of Phila.*, 166 A.3d 304, 314 n.10 (Pa. 2017) (holding that a party had no obligation to preserve issues for appeal to this Court when they were the appellees in the Commonwealth Court); *Sullivan v. Dept. of Transp.*, 708 A.2d 481, 483 (Pa. 1998)) ("the general rule that issues not raised in the lower court may not be raised on appeal applies only to appellants, not to appellees").

Only when Erie relied upon its view of "pending" in its argument to the Superior Court did Plaintiffs have an opportunity to respond to this argument. They did so. When the Superior Court ruled against them, Plaintiffs sought allowance of appeal by arguing that the Superior Court erred as a matter of law in finding that coordination applied only to actions that are already filed. Erie responded to this argument, and we granted review to decide whether the Superior Court erred as a matter of law in its interpretation of Rule 213.1. Accordingly, Erie's waiver argument is baseless.

[39]  *See, e.g., Getty,* 221 A.2d at 196 (holding that "pending" means actions that have been filed but not resolved); *Straw v. Fair*, 187 A.3d 966, 1004 (Pa. Super. 2018) (Strassburger, J., concurring and dissenting) (distinguishing the pending case from a new action); *McCutcheon*, 846 A.2d at 810 (holding that a case is "pending" only "after it is filed and is awaiting decision or settlement; after it is begun but is unfinished").

Erie next disputes Plaintiffs' argument that Rule 213.1(d)(3) vested discretion in the trial court to include future-filed cases, asserting that the trial court's discretion is cabined by the plain terms of Rule 213.1, which restricts coordination to pending actions. More broadly examining whether the coordination order in this case is consistent with the salutary aim of Rule 213.1 to enhance efficiency, Erie argues that the order does quite the opposite. As support, Erie asserts that coordinated actions move through the courts more slowly than individual actions, and that the plaintiffs in the Delaware County coordinated litigation have sought to have their cases un-coordinated because of the inefficiencies they are experiencing. According to Erie, the policy behind affording authority in the trial court of the first filed action to deprive courts across the Commonwealth of jurisdiction over a large number of complex cases is suspect, as individual state judges lack the perspective and experience inherent in federal MDL.

Erie also highlights due process concerns, asserting that Plaintiffs seek to usurp control of all similar cases from all plaintiffs, as demonstrated by their sweeping, unresolved request in the trial court to be appointed lead counsel of all coordinated actions. Erie worries that this power-grab will deprive plaintiffs not only of their choice of forum, but also of their choice of counsel, and will increase the costs and time associated with resolving claims. Reflecting concern for itself, Erie argues that the trial court's coordination order impairs its own due process rights to separate trials to focus upon individualized claims.

In their reply brief, Plaintiffs maintain that Rule 213.1 protects the due process rights of all litigants, including plaintiffs in future-filed cases and defendants. In particular, Plaintiffs note that the coordination order affords every litigant in every related action the opportunity to object to coordination before their case is transferred. Nor does the

coordination order preclude Erie from raising any individualized facts or issues in each particular case.

Our analysis of the parties' arguments begins with a review of the provisions of Rule 213.1, particularly with respect to its limitation in Subsection (a) to "actions pending." There presently is no dispute before this Court about whether various actions involve common questions of law or fact or arise from the same transaction or occurrence. Nor is there any dispute that Allegheny County is the court in which a complaint was first filed. Omitting these undisputed provisions, Rule 213.1(a) provides: "In actions pending in different counties . . . , any party, with notice to all other parties, may file a motion requesting the [Allegheny County trial court] to order coordination of the actions. Any party may file an answer to the motion and the court may hold a hearing."[40] Construing and giving effect to Rule 213.1(a)'s use of "pending," we read the text with reference to the context in which it appears.[41] In our view, for several reasons, this provision plainly limits coordination to cases that already have been filed.

First, there is a plain temporal limitation upon coordination that is apparent in the use of the phrase "actions pending" in Rule 213.1(a). "Pending," as an adjective, modifies the noun "action." Only "actions" that presently are "pending" can be the subject of a coordination motion. An action in this context is "a civil or judicial proceeding."[42] Actions

---

[40]     Pa.R.Civ.P. 213.1(a).

[41]     *See A.S.*, 143 A.3d at 906.

[42]     BLACK'S LAW DICTIONARY (11th ed. 2019). As this definition continues,

An action has been defined to be an ordinary proceeding in a court of justice, by which one party prosecutes another party for the enforcement or protection of a right, the redress or prevention of a wrong, or the punishment of a public offense. But in some sense this definition is equally applicable to special proceedings. More accurately, it is defined to be any judicial

(continued…)

generally are understood to commence with the filing of a complaint or a *praecipe* for a writ of summons.[43] Before a case is commenced through some sort of filing, it is not an action. It is only potential litigation, anticipated by the parties and their attorneys to become an action. An "action," therefore, is a lawsuit that already has commenced. Coupling "pending" with "action" illustrates that Rule 213.1 subjects to coordination only those lawsuits that already have commenced. There is no action pending if no action exists.

Second, this analysis is buttressed by the portion of Rule 213.1(a) that affords to any party the right to file an answer to the coordination motion. If we read "actions pending" to include only lawsuits that have commenced, the Rule sequentially affords any party the right to file a coordination motion, any party the right to answer the motion, and the trial court the opportunity to hold a hearing. After these three events occur, Rule 213.1(d) affords the trial court the discretion to stay the proceedings and to enter the coordination order. The coordination order is entered only after interested parties have had the opportunity to file answers to the coordination motion and the trial court has had the opportunity to hold a hearing. The right to file an answer to the motion is meaningful only if the court considers the answer before entering the order.

---

proceeding, which, if conducted to a determination, will result in a judgment or decree. The action is said to terminate at judgment.

*Id.*

43      The Rules of Civil Procedure define "action" as "a civil action brought in or appealed to any court which is subject to these rules." Pa.R.Civ.P. 1001. An action is commenced by the filing of a *praecipe* for a writ of summons or a complaint. Pa.R.Civ.P. 1007. In addition, the Judicial Code defines action as "any action at law or in equity," 42 Pa.C.S. § 102, and provides that "a matter is commenced" for purposes of the statute of limitations when "a document embodying the matter" is filed in a court or magisterial district, 42 Pa.C.S. § 5503.

Were we to follow Plaintiffs' suggestion and read "actions pending" to include cases that have not yet been filed, then the right to file an answer before entry of a coordination order becomes meaningless.  Under Plaintiffs' construction, a party would file the coordination motion (applicable to all pending and imminent actions), the trial court would (in its discretion) hold a hearing and enter the coordination order, and, when a new case is filed, the party to the new case would file an answer to the coordination motion that the trial court already had granted.  Construing a rule to afford a party the opportunity to answer a *fait accompli* not only offends the sequence of events contemplated by Rule 213.1(a) and deprives future litigants of their right to be heard before the trial court enters a coordination order, but also would make a mockery of motions practice.  The trial court's authorization of objections to coordination *after* the order has been entered does not satisfy the Rule's requirement that parties be afforded the right to file an answer *before* the order is entered.  We listen attentively to what the letter of the Rule actually requires.

Third, this reading of Rule 213.1(a) is consistent with an understanding of "pending" as encompassing something that has begun but not yet ended.  By modifying "action," the word "pending" limits those actions that may be subject to a particular coordination order.  Before (or after) a case is pending, it is not a candidate for coordination.  We discern no ambiguity in this word, as the common understanding of "pending" is that it refers to something that is ongoing, that has started but not concluded, or something that is awaiting consideration.  As Black's Law Dictionary explains, pending means "[r]emaining undecided; awaiting decision <a pending case>. 2. Parliamentary law. (Of a motion) under consideration; moved by a member and stated by the chair as a question for the meeting's consideration."[44]  A prior edition of Black's Law Dictionary defined "pending" as "begun, but not yet completed; during; before the conclusion of; prior

---

[44]  BLACK'S LAW DICTIONARY (11th ed. 2019).

to the completion of; unsettled; undetermined; in process of settlement or adjustment. Thus, an action or suit is 'pending' from its inception until the rendition of final judgment."[45] Similarly, Webster's Dictionary defines "pending" as "remaining undecided; awaiting decision or settlement; unfinished."[46]

These dictionary definitions share an understanding of "pending" as being temporally limited to things that have begun but not yet ended. In arguing that "pending" may also mean impending, or imminent, Plaintiffs advocate for imprecision. They would turn a commonly understood word into a contranym. For example, if "pending" and "impending" can both be said to apply to things that are about to occur, then we would lose the particular meaning embodied in the word "impending." As Bryan Garner explains in *Modern American Usage*, "pending" and "impending" denote very different things:

> What is *pending* is awaiting an outcome—e.g.: "Another precedent has resulted from a *pending* suit by the parents of an American-born teenager killed in a terrorist attack in Israel." What is *impending* is imminent (in the literal sense of the word, "hanging over one's head") and harmful—e.g.: "The phrase 'Back to School' strikes a chord of *impending* doom for most students." Yet it is not uncommon for writers to use *impending* for *pending*, maybe just because they think the extra syllable adds "gravitas." Whatever the reason, the slipshod extension threatens to deprive us of a useful word, as *impending* loses its connotations of danger or evil.[47]

To retain the distinction between "pending" and "impending," we reject Plaintiffs' invitation to collapse the two contrary meanings.

We acknowledge that there is some dictionary support for Plaintiffs' argument. Merriam-Webster's Collegiate Dictionary defines "pending" as "1: not yet decided: being

---

[45]     BLACK'S LAW DICTIONARY (5th ed. 1979).

[46]     RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY (2d ed. 2001).

[47]     Bryan Garner, GARNER'S MODERN AMERICAN USAGE, 596 (2003) (capitalization modified).

in continuance; 'the case is still pending.' 2: IMMINENT, IMPENDING."[48]  Similarly, the Court of Judicial Discipline acknowledged (but did not follow) the American Heritage Dictionary, which lists "impending" as one of the meanings of "pending."[49]  In our view, dictionary definitions that collapse the meaning of "pending" into "impending" confuse rather than clarify the distinct meaning of each word.  These dictionaries reflect the reckless extension that threatens to deprive us of the word "impending" and its ominous connotations.

Finally, Rule 213.1 thrice uses the word "pending" to describe the actions to which the Rule pertains.  If the trial court grants the coordination motion, then Rule 213.1(d)(2) authorizes the court to "transfer any or all further proceedings in the actions to the court or courts in which any of the actions is pending."  This grant of power affords the trial court that is coordinating the actions the discretion to coordinate in any court where an action is pending.  This provision would make no sense if, as Plaintiffs argue, it means that the trial court may order coordination in a court where an action has not yet been filed but is imminent.

Similarly, Rule 213.1(e) requires the court to send copies of the coordination order "to the courts in which the actions subject to the order are pending."  If, as Plaintiffs argue, an action can be said to be pending before it is filed, then there is no limitation on the court's obligation under this subsection.  The court would be required to send copies of its coordination order to all courts of common pleas across the Commonwealth, as every court has the potential to be a court in which a similar action will someday be filed.  We

---

[48]  MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY, https://www.merriam-webster.com/dictionary/pending (last viewed June 28, 2023) (capitalization in original).

[49]  *See McCutcheon*, 846 A.2d at 811 (citing NEW COLLEGE EDITION, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE, 1979).

reject such a nonsensical construction. "Pending" and "actions" as used in Subsection (e) plainly limit and define which courts are entitled to copies of the coordination order.

The 1990 Explanatory Comment further describes the court entertaining the coordination motion as the "court before which the motion is pending," and affords that court the authority to stay all actions that may be subject to coordination.[50] The only court to which this comment could apply is the court of the first-filed action that is presently entertaining a coordination motion. Reading "pending" in this comment to mean imminent, as Plaintiffs suggest, the Rule would afford the court in which a coordination motion has not yet been filed (but is imminent) the authority to stay all actions that may be subject to coordination, based upon speculation about future filings. Not only is this nonsensical, but it would also vastly expand the authority of the trial court. Engaging in "interpretive jiggery pokery" by replacing "pending" with "pending or impending" throughout the Rule and its comment would render Rule 213.1 incoherent.[51]

To be ambiguous, "pending" as used in Rule 213.1(a) would have to bear two reasonable interpretations. It does not. The only reasonable construction of "pending" in Rule 213.1(a) is that the word refers only to cases that already have been filed. The fact that some courts in other jurisdictions have construed "pending" in other contexts to include "impending" does not make Plaintiffs' interpretation of Rule 213.1(a) reasonable, and therefore does not inject ambiguity into the plain meaning of Rule 213.1.

As support for their argument, Plaintiffs primarily rely upon *In re Morely*, an unpublished appellate court decision from Michigan.[52] The *Morely* court was reviewing a statute that identified a particular government agency as having an interest in a petition

---

[50]    Pa.R.Civ.P. 213.1, cmt.

[51]    *See King v. Burwell*, 576 U.S. 473, 506 (2015) (Scalia, J., dissenting)

[52]    2020 WL 7414173.

for the appointment of a conservator when an application for benefits was "pending" before that agency.[53]  All parties agreed that no application had yet been filed, but that it soon would be.  Relying upon the definition of "pending" in Merriam-Webster's Collegiate Dictionary, which, as described above, includes "imminent" and "impending," the appellate court held that the word may encompass fillings that are imminent.[54]  In addition to not binding this Court, *Morely* is not persuasive, for the same reason that we view the plain meaning of pending as not including impending or imminent.

Nor does *McCutcheon* suggest that "pending" is ambiguous.[55]  There, the Court of Judicial Discipline considered Rule 4(D) of the Rules Governing Standards of Conduct of Magisterial District Judges.  Rule 4(D) provides in part that "[a] district justice shall . . . neither initiate nor consider *ex parte* or other communications concerning a pending or impending proceeding."[56]  The court examined Random House Dictionary's definition of pending to hold that "a case is 'pending' under Rule 4(D) after it is filed and is awaiting decision or settlement; after it is begun but is unfinished."[57]  Because there was no pending proceeding, the court proceeded to examine the meaning of impending as the other adjective contained in the rule.  The court recognized that Random House Dictionary defined "impending" as something that is imminent, or about to happen.  Although the court held that the drafters of the rule "must have thought the words mean something different, otherwise they would not have used both words,"[58] it observed that

---

[53]     *Id.*, at *2 (citing MCR 5.125(C)(25)).

[54]     *Id.* (citing Merriam-Webster's Collegiate Dictionary (11th ed.), at 915).

[55]     *McCutcheon*, 846 A.2d at 811.

[56]     Pa.R.St.Ct.M.D.J. 4(D).

[57]     *McCutcheon*, 846 A.2d at 810–11.

[58]     *Id.* at 811.

the American Heritage Dictionary listed "impending" as a definition of "pending." Examining the facts of the case, the court held that the relevant conduct occurred in the absence of either a pending or impending proceeding and, therefore, the respondent did not run afoul of Rule 4(D).[59]  Although the court adverted to the American Heritage Dictionary definition of "pending," it found no ambiguity in the use of that term in Rule 4(D) or in the distinct meaning it must carry in contrast to "impending."

In *St. Peter Herald v. City of St. Peter*, a Minnesota appellate court addressed a statute designating certain data as nonpublic if it were collected by a political subdivision as part of an active investigation "for the purpose of the commencement or defense of a pending civil legal action" or "retained in anticipation of a pending civil legal action."[60] After reviewing various dictionary definitions of pending, the appellate court returned to the statute's use of "anticipation" to hold that, although it may be impossible to anticipate something that is already in progress, it was possible to anticipate something that had not yet started but was threatened.  "Because one cannot anticipate a civil legal action once it has already commenced, the legislature must have intended the broader construction of "pending" (including threatened civil legal action) to apply."[61]  Thus, it was only in conjunction with "anticipated" that the court read "pending" to apply to something that had not yet begun.  On appeal, the Minnesota Supreme Court held that it was not the word "pending" that determined the classification of data as public or nonpublic, but whether the data was collected by a political subdivision.  As such, the Minnesota Supreme Court

---

[59]     *Id.* ("It is our conclusion that the Bartoe case was neither pending nor impending at the time of Respondent's conversations with her grandson and, for that reason, the Board has not established a violation of Rule 4(D).").

[60]     481 N.W.2d 405, 407 (Minn. Ct. App. 1992) (citing Minn.Stat. § 13.39, subds. 1, 2 (1990)), *rev'd* by *St. Peter Herald v. City of St. Peter*, 496 N.W. 812 (Minn. 1993).

[61]     *Id.* at 407.

deemed it unnecessary to construe "pending" at all. Neither case sheds light on the plain meaning of "pending" in Rule 213.1.

Cases that construe statutory provisions using "pending" and "in progress" together are not helpful. Where the legislature has used two different words, rules of statutory construction require courts to give those words distinct meanings.[62] When the legislature has used both words, courts unsurprisingly have accorded them different meanings in order to avoid redundancy. In *State v. Smith*, for example, a Tennessee court considered a statute criminalizing the destruction, tampering, or fabrication of evidence by a person "knowing that an investigation or official proceeding is pending or in progress."[63] Engaging in statutory construction of "pending" and "in progress," and examining decisions from other courts that had performed the same analysis, the court reasoned that the legislature intended to afford "pending" and "in progress" different meanings. Therefore, the court held that "pending" meant "impending."[64]

In contrast, the Superior Court in *Getty* was called upon to decide whether a case was pending or final to determine whether a statute that applied to "all proceedings

---

[62]     As we have explained, "[a] statute must be construed if possible to give effect to all of its provisions. It is presumed that every word, sentence or provision of a statute is intended for some purpose and accordingly must be given effect." *Commonwealth v. Lobiondo*, 462 A.2d 662, 664 (Pa. 1983) (cleaned up). "Thus, when the legislature uses two different words, we must . . . presume that it must have meant for the words to have separate meanings." *Commonwealth v. Elliott*, 50 A.3d 1284, 1290 (Pa. 2012) (cleaned up).

[63]     436 S.W.3d at 763.

[64]     *Id.*; *see also United States v. Hill*, 776 Fed. Appx. 908, 909 (6th Cir. 2019) ("Pending here means impending, or about to take place, since it must have a different meaning than 'in progress'".); *Lumpkin v. State*, 129 S.W.3d 659, 663 (Tex. App. 2004) (holding that, where a statute provided for the offense of tampering with evidence knowing that "an investigation or official proceeding is pending or in progress," the word "pending" meant "impending, about to take place" because it had to mean something other than "in progress").

pending" on or after a particular date was applicable.[65]  Holding that a case on appeal was pending before final disposition, and that the statute therefore applied, the court explained:

> Pendency, in practice, has been said to be 'the state of an undetermined proceeding.'  Black's Law Dictionary, 3rd Ed., p. 1345, defines the term as 'the state of an action, etc., after it has been begun, and before the final disposition of it.'  Instantly, there is no question that this case was on appeal to this Court at the time subsection 3501(c) went into effect.  Thus, this case meets the aforementioned definition of pending, as no final disposition had yet occurred.[66]

Consistent with our holding today, *Getty* held that "pending" refers to something that has begun but not yet concluded.

Accepting Plaintiffs' argument would require us to rewrite Rule 213.1 and hold that it does not mean what it says.  Plaintiffs' argument for ambiguity depends upon viewing the term "pending" in isolation and upon relying on court decisions that are non-binding, distinguishable, or simply not persuasive.  When read in conjunction with the rest of Rule 213.1, the intent is plain.  Accordingly, we reject Plaintiff's argument that Rule 213.1(d) vested discretion in the trial court to coordinate future-filed cases.  The discretion afforded by Rule 213.1(d) is limited by the plain terms of Rule 213.1(a) to actions that are pending when the coordination motion is filed.  The trial court's order exceeded the scope of Rule 213.1(a).

---

[65]     221 A.3d at 196.

[66]     *Id.*; *see also Houghton*, 128 A.2d at 60-61 (holding that, where intervention was appropriate "during the pendency of an action," a petition to intervene filed six weeks after the case had been disposed of was too late); *Straw*, 187 A.3d at 1004 (Strassburger, J., concurring and dissenting) (distinguishing between a final order and an interlocutory appeal by noting that a final order has resolved all claims while an interlocutory appeal occurs when claims remain pending in the lower court).

Given our conclusion that the meaning of Rule 213.1 is plain, we reject Plaintiffs' invitation to delve into the canons of rule construction upon which they heavily rely. Because Rule 127(c) aids our construction only when "the words of the rule are not explicit," it is not helpful in this context. Nor is it appropriate to examine the federal court's MDL device to ascertain what language the federal rules employ or what meaning the JPML affords those rules. Our interpretation today is based solely on the plain language of Rule 213.1, not upon a comparison with federal law or what may be the most efficient manner of coordination were we deciding this case in a vacuum.

We recognize, however, Plaintiffs' argument that limiting coordination to pending actions is in tension with the intent of the Rule as explained in its Comment: "the avoidance of multiple trials and proceedings" in actions involving common questions of law or fact and the "resultant economy to both the parties and the judicial system."[67] Defending against the same claims in numerous future-filed cases that could not be captured by the initial coordination order may be duplicative, judicially inefficient, and expensive, and may risk inconsistent rulings.

There is nothing in Rule 213.1 that precludes multiple or serial coordination motions. Following the entry of a coordination order and the filing of more actions involving common questions of law or fact, the Rule affords "any party" the opportunity to move to have these later-filed tag-along actions coordinated by the Allegheny County trial court as the first-filed court.[68]

As a point of comparison, federal MDL is a tool to coordinate related cases across different federal courts in service of efficiency. The MDL device was created by statute. The JMPL, which consists of a panel of seven federal judges chosen by the Chief Justice

---

[67]    Pa.R.Civ.P. 213.1, cmt.

[68]    *Id.*, (a).

of the United States Supreme Court, is authorized to consolidate certain cases and to transfer them to a single judge chosen by the panel for pretrial proceedings.[69] Although the MDL statute limits coordination to pending actions,[70] the JPML rules permit the conditional coordination of tag-along actions.[71] If a party objects, the clerk of the JPML may vacate the order.[72]

About half of the states have created some sort of coordination device with a wide range of variation across the country.[73] In doing so, the states have had to choose among different alternatives and to make various decisions to structure coordination at the state level. For example, states could choose to model the institutional structure of the MDL device by vesting authority in a centralized institution to consolidate cases, or, like Pennsylvania, to create a peer model in which trial judges with pending cases are authorized to consolidate cases from other courts across the state.[74] There are variations within the peer model as well, with some states (like Pennsylvania) vesting authority only in the judge in the first-filed action, and others vesting authority in any judge with a pending case or the concurrence of the transferor and transferee judges.[75] States have also had to make decisions about the standards for coordination and the extent of

---

[69]     28 U.S.C. § 1407(a), (d).

[70]     *Id.*, § 1407(a).

[71]     Rules of Procedure of the United States JPML 7.1 ("Upon learning of the pendency of a potential tag-along action, the Clerk of the Panel may enter a conditional order transferring that action to the previously designated transferee district court for the reasons expressed in the Panel's previous opinions and orders.").

[72]     *Id.*

[73]     *See generally* Zachary D. Clopton & D. Theodore Rave, *MDL in the States*, 115 NW. U. L. REV. 1649 (2021).

[74]     *Id.* at 1654.

[75]     *Id.* at 1160, 1667-68.

coordination.  For example, the federal MDL device permits coordination only for pre-trial proceedings.  There is no such limitation in Rule 213.1.  As the Rule's Comment explains:

> Unlike Section 1407 of the Judicial Code of the United States, 28 U.S.C.A. § 1407, which provides for the transfer of actions "for coordinated or consolidated pretrial proceedings", the purposes for which actions may be coordinated are not specified in Rule 213.1. The court may "make any other appropriate order." For instance, actions may be consolidated generally, for pretrial proceedings, for determination of specified issues of law or fact or for trial. The order is limited only by its function of providing a fair and efficient method of adjudicating the controversy.[76]

States vary as well in their treatment of tag-along cases.  For example:

> The transferee judge, upon a motion, can consolidate tag-alongs in California, Oregon, Virginia, and (with advice and consent of the panel) West Virginia. In Colorado, the court clerk can effect the transfer. In New York, unopposed tag-along motions are granted automatically, while opposed motions go to the panel. In New Jersey, the supreme court's initial order can specify when tag-alongs may be transferred automatically. And in Texas, tag-alongs are transferred upon a notice of filing, but then any party can ask the transferee court to remand the action. That decision is appealable to the panel.[77]

Other decision points in crafting state coordination devices include the appointment of lead counsel, remand to the transferor court, and appellate review.[78]

Whether one state's system is better than another's, or better than the federal MDL device, is a normative evaluation that is beyond the scope of this appeal.  The variation among states suggests the many alternatives and decisions that are available to each state embarking upon a system of coordination.  When Rule 213.1 was drafted, it intentionally declined to impose a system similar to that of the federal MDL:

---

[76]     Pa.R.C.P. 213.1, cmt.

[77]     Clopton & Rave, *supra* n. 74 at 1672.

[78]     *Id.* at 1667-75.

Pennsylvania does not have legislation governing this area. There are no guidelines similar to those of the federal Manual for Complex Litigation, nor is there a supervisory body such as the Judicial Panel on Multidistrict Litigation and none is proposed by the new rule. Rather, the rule provides a mechanism for the various courts of common pleas to work together when litigation crosses county lines.[79]

There may be advantages to coordinating tag-along cases, such as avoiding duplicative discovery and inconsistent verdicts. These advantages are not captured by limiting coordination to "pending actions," or by mandating that parties to actions that are sought to be coordinated have the opportunity to file an answer to the coordination motion (before the trial court directs coordination). Whether the limitation of coordination to pending actions is a feature or a bug of the design of Rule 213.1 is beyond the scope of this appeal. We leave it to the Civil Procedural Rules Committee to consider the implications of the arguments raised in this case and to determine whether to recommend that we consider any revisions to Rule 213.1.

### III. "Any party"

In the second issue encompassed within our grant of *allocatur*, Erie argues that "any party" under Rule 213.1(a) means a party who wants their subsequently-filed case to be coordinated with the first-filed case. Erie contends that

> Rule 213.1 has never been read to permit nonparties to file a motion to coordinate and transfer venue for cases in other county courts to which the movant is not a party, where none of the actual parties to such other cases have moved to transfer their case (and where, as here, in many instances, all the parties in cases to be transferred to venues across the state opposed having their cases transferred to an inconvenient forum).[80]

---

[79]    Pa.R.Civ.P. 213.1, cmt ¶ 3.

[80]    Erie's Brief at 31.

Plaintiffs first respond that Erie did not dispute Plaintiffs' ability to seek coordination in the trial court. Rather, according to Plaintiffs, it was only on appeal that Erie advanced the present argument that Plaintiffs are not "any party" under Rule 213.1(a) and therefore could not move for coordination. As such, Plaintiffs argue that Erie waived this issue. On the merits, Plaintiffs observe that they are the parties to the first business interruption case against Erie, which they brought in Allegheny County, the "court in which a complaint was first filed."[81] Plaintiffs assert that the plain language of Rule 213.1(a) authorizes "any party" to file a motion in Allegheny County requesting coordination. As a party to the Allegheny County action, Plaintiffs believe they qualify as "any party" under Rule 213.1(a).

Upon our review of the record, it is apparent that Plaintiffs are correct that Erie never challenged Plaintiffs' right to seek coordination nor otherwise argued about the meaning of "any party" in Rule 213.1 in the trial court. Erie did not raise this argument in its Brief in Opposition to Coordination, in its motion for reconsideration, or in its Rule 1925(b) Statement of Matters Complained of on Appeal.[82] In neither the trial court's coordination order nor its Rule 1925(a) opinion did the trial court consider whether Plaintiffs could seek coordination in the first place. This was no oversight on the part of the trial court, because Erie argued for the first time on appeal to the Superior Court that the Rule did not permit Plaintiffs to seek coordination. Although Erie filed a reply brief in this Court, it has not addressed Plaintiffs' waiver argument.

If Erie believed that Plaintiffs had no authority under Rule 213.1(a) to seek coordination, it could have brought this argument to the trial court. If its argument had been successful, such a ruling would have mooted its other objections to coordination. Instead, after Plaintiffs sought coordination on June 24, 2020, Erie objected to

---

[81]     Pa.R.Civ.P. 213.1(a).

[82]     Pa.R.A.P. 1925(b).

coordination for two reasons: (1) not all parties had received notice of the coordination motion, and (2) coordination was not warranted under the discretion afforded in Rule 213.1(c).[83]  Erie did not base its objection on the argument that Plaintiffs could not seek coordination at all.

Following the trial court's July 23, 2020 coordination order, Erie moved for reconsideration on the same grounds contained in its opposition to coordination, sought clarification of the coordination order, and objected to a proposed case management order.[84]  Again, Erie did not argue that Plaintiffs were not "any party" under Rule 213.1(a). In its Rule 1925(b) Statement of Matters Complained of on Appeal, Erie once again made no argument that Plaintiffs were not parties who could seek coordination under Rule 213.1(a).

Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.[85]  Issues that are not included in the Rule 1925(b) statement are waived.[86]  If Erie believed that Plaintiffs were not "parties" who could file a motion for coordination under Rule 213.1(a), it was incumbent upon Erie to raise this argument with the trial court and in its Rule 1925(b) statement.  It did not do so.  We therefore find that Erie waived this issue.

We agree with the Superior Court that Rule 213.1 does not permit the coordination of actions that have not been filed at the time of the coordination motion.  We further hold that Erie waived its argument that Plaintiffs were not entitled to seek coordination in the first place.  The order of the Superior Court is affirmed.

---

[83]    *See* Erie's Brief in Opposition to Plaintiff's Motion to Coordinate at 4.

[84]    Erie's Motion for Reconsideration and Clarification at 1.

[85]    Pa.R.A.P. 302(a).

[86]    Pa.R.A.P. 1925(b)(4)(vii).

Chief Justice Todd and Justices Donohue, Dougherty and Mundy join this opinion.

Justice Brobson did not participate in the consideration or decision of this matter.